# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## Appeal No. 25-10388-B

---

## NETROADSHOW, INC.,

### Plaintiff/Counterclaim Defendant/Appellee,

### versus

## LISA CARRANDI,

### Defendant/Counterclaimant/Appellant.

---

## APPELLANT'S OPENING BRIEF

---

### On Appeal from the United States District Court
### for the Northern District of Georgia, Atlanta Division
### District Court Docket No. 1:23-CV-05697-ELR

---

**MICHAEL D. FLINT**
Georgia Bar No. 264725
**MARY ELLEN A. LIGHTHISER**
Georgia Bar No. 10547
**McClure & Kornheiser, LLC**
**6400 Powers Ferry Road**
**Suite 150**
**Atlanta, Georgia 30339**
**Telephone: (678) 388-2680**

**Attorneys for Defendant/Counterclaimant/Appellant**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. 2

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................. 3

STATEMENT REGARDING ORAL ARGUMENT ........................................... 5

STATEMENT OF JURISDICTION ....................................................... 6

STATEMENT OF THE ISSUES............................................................ 7

STATEMENT OF THE CASE ............................................................. 8

SUMMARY OF THE ARGUMENT ....................................................... 16

ARGUMENT AND CITATIONS OF AUTHORITY ......................................... 18

    1. The trial court erred in ruling that the Agreement's choice-of-law provision
       precluded Appellant from asserting a private right of action arising under
       California law after ruling that the Non-Compete was "void on its
       face."……………………………………………………………….…18

    2. The trial court erred in ruling that a choice-of-law provision applying only to
       the Agreement and the rights of the parties thereunder precluded Appellant
       from asserting a private right of action arising under California law…....... 21

CONCLUSION .............................................................................. 25

# TABLE OF AUTHORITIES

***Cases***                                                       ***Page(s)***

Bullard v. MRA Holding, LLC, 292 Ga. 748 (2013)............................................23

Com. Disaster Recovery, LLC. v. Charter Landing Condo. Owners Ass'n, Inc.,
   Case No. 1:21-CV-3363-CAP, 2022 WL 18459538 (N.D. Ga. July 22, 2022)...23

Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151 (11th Cir. 2009) .................21, 22

Dowis v. Mud Slingers, Inc., 279 Ga. 808 (2005) ..................................23

Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292 (11th Cir.
   2003) ......................................................................................................22

Harvey v. Merchan, 311 Ga. 811 (2021) ........................................................16, 23

Moody v. Bache & Co., 570 F.2d 523 (5th Cir. 1978) .........................................21

Osiris Therapeutics, Inc. v. MiMedx Grp., Inc., Case No. 1:19-CV-00857, 2020
   WL 11192769 (N.D. Ga. Feb. 24, 2020)..........................................................23

Risdon Enterprises, Inc. v. Colemill Enterprises, Inc., 172 Ga. App. 902 (1984) ..24

Siech v. Hobbs Grp., LLC, 198 F. App'x 840 (11th Cir. 2006). ...........................15

***Statutes***

28 U.S.C. § 1291...................................................................................... 6

28 U.S.C. § 1332...................................................................................... 6

28 U.S.C. § 1367...................................................................................... 6

Cal. Bus. & Prof. Code § 16600.5(e)...................................................... 8

O.C.G.A. § 51-1-1 .................................................................................21

*NetRoadshow, Inc. v. Lisa Carrandi, No. 25-10388-B*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, firms, partnerships, and corporations that are known to have an actual or potential interest in the outcome of this appeal:

1. Baird, Courtney L., Former Counsel for Defendant-Appellant Lisa Carrandi

2. Caplan, Kana A., Counsel for Plaintiff-Appellee NetRoadshow, Inc.

3. Carrandi, Lisa, Defendant-Appellant

4. Cressler, Taylor A., Counsel for Plaintiff-Appellee NetRoadshow, Inc.

5. Duane Morris LLP, Former law firm representing Defendant-Appellant Lisa Carrandi

6. Flint, Michael D., Counsel for Defendant-Appellant Lisa Carrandi

7. Krevolin & Horst, LLC, Law firm representing Plaintiff-Appellee NetRoadshow, Inc.

8. Lighthiser, Mary Ellen A., Counsel for Defendant-Appellant Lisa Carrandi

9. Lucci, Deanna J., Former Counsel for Defendant-Appellant Lisa Carrandi

10. McClure & Kornheiser, LLC, Law firm representing Defendant-Appellant Lisa Carrandi

11. NetRoadshow, Inc. (Georgia, Delaware), Plaintiff-Appellee, no parent corporation or publicly-held corporation owns more than 10% of its stock

12. Ross, Eleanor L., United States District Court Judge for the Northern District of Georgia, trial judge

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. This case presents an undecided question about the application of a recently enacted California law which gives a private right of action to a California citizen whose former employer sued her in Georgia in attempt to enforce a restrictive covenant that is void under Georgia law. The issues involved in this appeal have never been addressed by this Court or any other Circuit Court in the country. For the benefit of employers of California residents and of California residents who are sued within this Circuit's jurisdiction, this Court should give a definitive interpretation of Cal. Bus. & Prof. Code § 16600.5 as it applies to employers whose restrictive covenants are held unenforceable. Oral argument will aid the Court in resolving that important question.

## **STATEMENT OF JURISDICTION**

The district court had diversity jurisdiction under 28 U.S.C. § 1332. The parties are completely diverse because the plaintiff, NetRoadshow, Inc. ("NRS") is a Delaware corporation with its principal place of business in Georgia, and the defendant, Lisa Carrandi, is a resident of California. Doc. 1-1, at 4. The case met the amount-in-controversy requirement because NRS sought nonmonetary relief in addition to economic damages in an amount exceeding the jurisdictional amount of $75,000.00. Doc. 1, at 2; Doc. 1-1, at 14. The district court exercised supplemental jurisdiction over Ms. Carrandi's counterclaim pursuant to 28 U.S.C. § 1367. This Court has appellate jurisdiction under 28 U.S.C. § 1291 to review the district court's orders and final judgment in favor of NRS on Ms. Carrandi's counterclaim. Docs. 79, 82, and 83.

## **STATEMENT OF THE ISSUES**

This case presents two issues:

(1)    Whether an employment agreement's choice-of-law provision precludes a California resident from asserting a private right of action under Cal. Bus. & Prof. Code § 16600.5 against her former employer who sues her to enforce restrictive covenants that are void under the chosen state's law.

(2) Whether a contract's choice-of-law provision governing only the parties' rights under the contract is too narrow to encompass a private right of action arising under another state's statutory law.

<u>**STATEMENT OF THE CASE**</u>

This appeal arises from the attempts of Appellee NetRoadshow, Inc. ("NRS") to enforce a facially-overbroad restrictive covenant against its former employee, Appellant Lisa Carrandi. Ms. Carrandi has been a California resident for over a decade, and thus when she was sued in Georgia she sought the protections of California law by asserting a counterclaim against NRS seeking injunctive relief, damages, and attorneys' fees under Cal. Bus. & Prof. Code § 16600.5(e). NRS has not appealed the court's ruling on the invalidity of the restrictive covenant it attempted to enforce against Ms. Carrandi, and thus the unenforceability of that provision is not in dispute in this appeal. Rather, Ms. Carrandi seeks reversal of the district court's dismissal of her counterclaim based on the employment agreement's choice-of-law provision—which governed only the rights of the parties under the agreement—after holding that the restrictive covenant was "void on its face" under Georgia law.

### A. Ms. Carrandi's Employment at NRS

On May 3, 2005, Ms. Carrandi accepted a job offer from NRS for the position of "Account Manager." NRS is a company providing "internet based management presentations, that are commonly referred to as electronic roadshows, for major investment banking clients," and at the time it had offices in New York, Atlanta, and London. Doc. 13-1, at ¶ 3. As an Account Manager, Ms. Carrandi's

role centered on providing support for the sales team, including attending roadshows and performing administrative tasks for the sales team, but she was not a salesperson.

Ms. Carrandi's job offer was contingent on her execution of an employment agreement ("the Agreement"), which included a confidentiality provision, a non-compete provision ("the Non-Compete"), and a choice-of-law provision stating that "this Agreement and the rights of Company and Employee hereunder shall be governed by and construed in accordance with the laws of Georgia." Doc. 1-1, at 23. The Non-Compete was exceptionally broad, prohibiting her from performing "services comparable to the services Employee performed for the Company [NRS] as an employee or independent contractor for (i) any Competing Enterprise within the Area," which was defined as "a radius of one hundred fifty (150) miles around each office of the Company in Atlanta, Georgia, New York City, New York, and London, England." Doc. 1-1, at 22. The Agreement did not define the term "services," and since Ms. Carrandi worked for NRS for over 18 years, she held a number of different job titles performing a variety of job duties over the course of that tenure.

For the first eight years of her employment, Ms. Carrandi was a resident of New York, but in 2013 she moved to California, where she set up a home office and managed the NRS client services team remotely. Doc. 42, at 2, 4. NRS derived

significant benefits from Ms. Carrandi's location on the West coast, and referred to her as its "West Coast/NoCal representative." Doc. 42, at 16. In April 2016, NRS's Director of Finance described Ms. Carrandi's home office in California as NetRoadshow's "West coast services," giving the business "enhanced time flexibility and coverage to assist our clients," since "it is a necessity to have offices globally located around the world and in multiple time zones within the United States." Doc. 42, at 14.

Ms. Carrandi's location in California also allowed NRS to hold itself out as having offices in California, even representing on its website that it had an office in San Francisco during the pendency of the underlying lawsuit. Doc. 36-1, at 2; Doc. 42, at 4. In acknowledgement that its California employees were entitled to the protections of their state's law, NRS's Employee Handbooks included a "California Specific Policies" section which detailed NRS's compliance with a number of California labor and wage protections applicable only to California employees. Doc. 65-1, at 85-91; Doc. 65-2, at 53-56; Doc. 65-3, at 61-72.

By the summer of 2023, Ms. Carrandi had been demoted several times, and NRS had recently completed several rounds of layoffs in the client services team, where she worked. Doc. 42, at 7. Thus, believing that she would likely be terminated in the next round of layoffs, Ms. Carrandi resigned from NRS on July 31, 2023. Id. On September 5, 2023, she accepted a sales position at a financial

services company called Finsight Group, Inc., with the job title Director of Business Development in the Bay Area. Id. at 9. Unlike any of the roles she performed at NRS, Ms. Carrandi was purely a salesperson at Finsight, receiving a commission in addition to her salary, and selling a broader suite of financial products and services than those offered by NRS. Id.

### B. NRS's Lawsuit Against Ms. Carrandi

On November 30, 2023, NRS sued Ms. Carrandi for her purported breach of the Non-Compete, seeking injunctive relief in addition to damages. Doc. 1-1. On January 1, 2024, before Ms. Carrandi had filed her Answer, Cal. Bus. & Prof. Code § 16600.5 went into effect, making it a civil violation for an employer or former employer to attempt to enforce a restrictive covenant against a California citizen, "regardless of whether the contract was signed and the employment was maintained outside of California." Cal. Bus. & Prof. Code § 16600.5(b). That statute also gave a private right of action to employees whose employers committed such a civil violation, entitling them to "injunctive relief or the recovery of actual damages, or both," in addition to "reasonable attorneys' fees and costs." Cal. Bus. & Prof. Code § 16600.5(e).

Thus, on January 8, 2024, Ms. Carrandi filed her Verified Answer and Counterclaim, seeking a permanent injunction, damages, and attorneys' fees and costs under Cal. Bus. & Prof. Code § 16600.5(e) ("the Counterclaim"). Doc. 16.

On January 29, 2024, NRS moved to dismiss the Counterclaim for failure to state a claim for which relief can be granted. Doc. 25. The principal argument in that motion was that, because the Agreement included a Georgia choice-of-law provision, it could not be invalidated under California law, and thus Ms. Carrandi did not have a right to assert her Counterclaim under Georgia law. Doc. 25-1, at 4-5. NRS also claimed that application of California law would violate its due process rights because Ms. Carrandi had "unilaterally" moved to California, alleging that since it did not have an office in California (contrary to its website's representations) and had no other contacts in the state, it could not be subject to California law. Doc. 25-1, at 2, 9.

Ms. Carrandi opposed that motion,[1] arguing that her defense to NRS's breach of contract claim was distinct from the Counterclaim, and that the relief sought in the Counterclaim was not to invalidate the Non-Compete under California law, but to obtain the recovery to which California law entitled her. Doc. 36, at 4-5. Thus, Ms. Carrandi argued, the two claims were governed by law

---

[1] Ms. Carrandi also filed a motion to voluntarily dismiss her Counterclaim without prejudice in order to pursue it in California state court, since it involved novel and complex issues of state law. Doc. 35. Three months later, the district court had not dismissed the Counterclaim, and the Northern District of California (where NRS had removed the state action) transferred the California action to the Northern District of Georgia pursuant to the first-to-file rule. Thus Ms. Carrandi withdrew her motion to voluntarily dismiss the Counterclaim and moved to consolidate the two actions instead. Docs. 62 & 66. While this background is helpful to provide a picture of the procedural complexity of the underlying action, these proceedings do not materially affect the grounds of this appeal.

of different states, and since the Agreement's choice-of-law provision only governed the rights of the parties under the contract, it did not apply to her Counterclaim, which arose under California state law. Doc. 36, at 5.

On March 7, 2024, the Northern District of Georgia held that the Non-Compete on which NRS's claims were based was so broad and indefinite that it was "void on its face" under controlling Georgia law, and thus could not be enforced. Doc. 51, at 6, 12, 13. However, the district court did not yet rule on NRS's motion to dismiss the Counterclaim.

On June 28, 2024, after the expiration of the four-month discovery period, Ms. Carrandi filed a motion for summary judgment on all claims, seeking judgment in her favor on her Counterclaim in addition to an order dismissing NRS's claim against her. Doc. 65. NRS filed a cross-motion for summary judgment on Ms. Carrandi's Counterclaim on July 1, 2024, acknowledging that "much of the argument herein mirrors the arguments in NetRoadshow's Motion to Dismiss Ms. Carrandi's Counterclaim, *see* [Doc. 25], which is still pending before this Court." Doc. 67-1, at 3.

In its motion for summary judgment, NRS argued that the newly-enacted California law violated "bedrock" constitutional principles of federalism, comity, and due process, and objected to the "surprise" of defending itself "against a cause of action it did not expect due to lack of connection with the enacting jurisdiction."

Doc. 67-1, at 12. In response, Ms. Carrandi presented evidence regarding the benefits NRS received from Ms. Carrandi's position on the West coast and that, contrary to its argument that application of California law to its employee relationships violated its constitutional rights, it typically *did* comply with state law as applicable to its California employees, as reflected in its Employee Handbooks. Doc. 71. Ms. Carrandi also reiterated that the choice-of-law provision applied Georgia law only to the parties' rights under the Agreement, and did not extend to a private right of action arising under California law. Doc. 71, at 5-8.

On September 10, 2024, the district court granted NRS's motion to dismiss Ms. Carrandi's Counterclaim based on the Agreement's choice-of-law provision, without addressing any of the arguments or evidence submitted in support of or opposition to NRS's motion for summary judgment. Doc. 79. The court held that only Georgia law could apply to the Agreement, and "unlike California law, Georgia law recognizes that reasonable restrictive covenants are enforceable." Doc. 79, at 16. However, the court did not acknowledge its own prior holding that, under *Georgia* law, the restrictive covenant at issue in this action was void and unenforceable, nor did it assess whether the specific wording of the choice-of-law provision encompassed private rights of action arising *outside* of the contract.

Instead, the court relied heavily on decisions in other states interpreting choice-of-law provisions in cases seeking to invalidate restrictive covenants under

California law. Doc. 79, at 12-14. None of those cases involved contracts that were unenforceable under the chosen state's law, nor did they involve claims under Cal. Bus. & Prof. Code § 16600.5(e).

On January 7, 2025, the district court granted summary judgment in Ms. Carrandi's favor on all of NRS's claims, reiterating its holding that the Non-Compete was "void on its face" and thus unenforceable. Doc. 82, at 3, 7-8. The court denied Ms. Carrandi's motion for summary judgment on her Counterclaim, finding that motion moot in light of its grant of NRS's motion to dismiss. Doc. 82, at 10, 14. Nonetheless, the court addressed some of the arguments in that motion, rejecting Ms. Carrandi's argument that the choice-of-law provision did not apply to her private right of action arising under California law because it was not a right arising under the Agreement. Doc. 82, at 9. In doing so, the court reasoned that

> NetRoadshow's right to enforce the terms of the Agreement does arise under the Agreement and, thus, is governed by Georgia law. Carrandi's Counterclaim not only necessarily implicates that right, but also her California-law based cause of action exists only because of NetRoadshow's attempt to enforce its right under the Agreement.

Doc. 82, at 9.

Again, the court did not acknowledge its own holding in the same Order that NRS did *not have* a right to enforce the Non-Compete under Georgia law, since it was "void on its face." Nonetheless, based on this reasoning, the court entered its

final judgment on all claims on January 7, 2025. Doc. 83. Ms. Carrandi timely filed her notice of appeal on February 6, 2025. Doc. 84.

## SUMMARY OF THE ARGUMENT

The district court's rulings on Ms. Carrandi's Counterclaim include two inherently contradictory conclusions: (1) that the Non-Compete is void and unenforceable under Georgia law; and nonetheless, (2) that the Agreement's choice-of-law provision prevents Ms. Carrandi from asserting a private right of action arising under California law because NRS had a right to enforce the Non-Compete under Georgia law. Both of these conclusions cannot be true. NRS did not have a right to enforce its Non-Compete under Georgia law because that provision was void. Thus, Georgia law cannot shield NRS from a California law enacted to protect California citizens from wrongful attempts to enforce void restrictions like the one in this case. Ms. Carrandi sustained significant damages and attorneys' fees in the course of defending herself from an unenforceable Non-Compete, and under her own state's law she is entitled to recover those damages from NRS.

Moreover, the Agreement's choice-of-law provision does not govern Ms. Carrandi's private right of action under her own state's law, since that provision applies Georgia law *only* to "this Agreement and the rights of Company and Employee hereunder." Once the district court determined that NRS did not have a

right to enforce the Non-Compete under Georgia law, the assessment of the parties' rights under the Agreement was complete, and the choice-of-law provision reached no further. Ms. Carrandi's right to recovery from NRS was not a right under the Agreement; it was a right arising under California statute. Thus, the district court should have applied Georgia's choice-of-law rules, under which the principle of *lex loci delicti* requires the application of the substantive law of "the place where the injury sustained was suffered rather than the place where the act was committed." Harvey v. Merchan, 311 Ga. 811, 813–14 (2021). As a California resident, Ms. Carrandi's damages were sustained in California, and thus California law should apply to permit her recovery.

## <u>ARGUMENT AND CITATIONS OF AUTHORITY</u>

**(1) The trial court erred in ruling that the Agreement's choice-of-law provision precluded Appellant from asserting a private right of action arising under California law after ruling that the Non-Compete was "void on its face."**

Six months after ruling that the Non-Compete that NRS sought to enforce against Ms. Carrandi was so broad and indefinite that it is "void on its face" under Georgia law, the district court dismissed Ms. Carrandi's Counterclaim under Cal. Bus. & Prof. Code § 16600.5(e), finding that Georgia law controlled its resolution. Doc. 79. The court reasoned that, "unlike California law, Georgia law recognizes that reasonable restrictive covenants are enforceable," but did not acknowledge that it already held that, under Georgia law, *this* restrictive covenant was *not* reasonable and *not* enforceable. Doc. 51, at 6, 12, 13; Doc. 79, at 16; Doc. 82, at 3, 7-8.

In its dismissal of the Counterclaim, the district court reasoned that "the relevant question under the applicable Georgia choice-of-law principles is whether a decision to uphold a choice-of-law provision would be contrary to the public policy or interests of *this* state—Georgia." Doc. 79, at 15. On the contrary, this was not "the relevant question" presented in the motion to dismiss, since the Counterclaim did not seek to apply California law to invalidate the Non-Compete; Georgia law did that. Doc. 36, at 4-5. Rather, the Counterclaim sought protection

from, and recovery of damages sustained as a result of, NRS's wrongful attempted enforcement of the void Non-Compete.

Having already decided that the Non-Compete was "void on its face" under Georgia law, the district court's ruling on the viability of the Counterclaim did not require revisiting which state's law controlled the enforceability of the void Non-Compete. NRS did not have a right to enforce a void Non-Compete under Georgia law, so the choice-of-law provision in the same Agreement could not have precluded Ms. Carrandi from asserting a private right of action redressing the attempted enforcement of a void restrictive covenant.

The court's reasoning is particularly flawed since the Agreement could not be "blue-penciled" to sever the unenforceable Non-Compete from the rest of the contract. Because covenants ancillary to employment are subject to strict scrutiny under Georgia law applicable to the 2005 Agreement, "Georgia courts allow no reformation or blue-penciling of a covenant ancillary to employment agreements to allow enforceability of at least some of the otherwise overbroad covenant." Siech v. Hobbs Grp., LLC, 198 F. App'x 840, 842 (11th Cir. 2006). See also Am. Anesthesiology of Georgia, LLC v. Northside Hosp., Inc., 362 Ga. App. 350, 354–55 (2021) ("We review the enforceability of restrictive covenants entered into before May 11, 2011 (as is the case here), based on the law as it stood at that time,

before the enactment of Georgia's Restrictive Covenants Act," when "Georgia law disfavored restrictive covenants . . .").

Under this principle, if one restrictive covenant in an employment agreement is found unenforceable, then all covenants in that agreement are struck down along with it, even if they might otherwise have been valid, since "Georgia law is clear that if one of them is unenforceable, then they are all unenforceable. This is based on the concept that in restrictive covenant cases strictly scrutinized as employment contracts, Georgia does not employ the 'blue pencil' doctrine of severability." Advance Tech. Consultants, Inc. v. Roadtrac, LLC, 250 Ga. App. 317, 320 (2001).

After the Court struck down the Non-Compete, there was no remaining dispute about the parties' rights under the Agreement, and nothing else to construe under Georgia law. Ms. Carrandi's Counterclaim did not implicate any right under the Agreement other than NRS's purported right to enforce the Non-Compete. However, it is undisputed that NRS had no such right, since that provision is void and unenforceable under Georgia law. Thus, the district court erred in dismissing Ms. Carrandi's Counterclaim based on the internally inconsistent conclusion that Georgia law gave NRS a right to attempt to enforce the Non-Compete, while also holding that provision unenforceable under Georgia law. That decision should be reversed.

**(2)  The trial court erred in ruling that a choice-of-law provision applying only to the Agreement and the rights of the parties thereunder precluded Appellant from asserting a private right of action arising under California law.**

The district court also erred by misinterpreting the unambiguous text of the choice-of-law provision, which governed only the rights of the parties under the Agreement, to extend to related claims between the parties. The plain text of the choice-of-law provision states that "this Agreement and the rights of Company and Employee hereunder shall be governed by and construed in accordance with the laws of Georgia." Doc. 1-1, at 23. Thus, this provision explicitly applies only to the Agreement and the rights of the parties *under the Agreement*. As discussed *supra*, NRS did not have a right to enforce the Non-Compete under Georgia law, and that ruling ended the inquiry into the parties' rights under the Agreement. The Counterclaim did not seek to litigate the parties' rights under the Agreement, and thus the choice-of-law provision did not require the application of Georgia law to the Counterclaim.

Since the Counterclaim sought to assert rights which were not governed by the choice-of-law provision, the district court should have applied Georgia's choice-of-law rules, which required application of California law under the doctrine of *lex loci delicti*. Because the Counterclaim arises out of the violation of a private legal right, it should be analyzed as a tort claim, not a contractual claim, since Georgia law defines a tort as "the unlawful violation of a private legal right

other than a mere breach of contract, express or implied." O.C.G.A. § 51-1-1. <u>See also</u> <u>Moody v. Bache & Co.</u>, 570 F.2d 523, 529 (5th Cir. 1978) (A private right of action arising under a statutory enactment is "in the nature of a tort action.").

Thus, the Court should look to case law analyzing whether choice-of-law provisions extend to related tort claims in deciding whether the choice-of-law provision at issue in this case encompasses Ms. Carrandi's Counterclaim. This Court has held that "[i]n determining whether a choice-of-law clause contained in a contract between two parties also governs tort claims between those parties, a court must first examine the scope of the provision. [Cit.] A choice-of-law provision that relates only to the agreement will not encompass related tort claims." <u>Cooper v. Meridian Yachts, Ltd.</u>, 575 F.3d 1151, 1162 (11th Cir. 2009) (citation omitted). This Court gave the example that "a provision providing that '[t]his release shall be governed and construed in accordance with the laws of the State of [X],' will be construed narrowly as it only purports to govern the agreement itself and does not refer 'to any and all claims or disputes arising out of the' agreement," which would be construed to include tort claims. <u>Id.</u>

Likewise, this Court construed a choice-of-law provision narrowly where it provided that a release "shall be governed and construed in accordance with the laws of the State of Delaware," observing that the effect of the clause as that "only the release itself is to be construed in accordance with the laws of the State of

Delaware." <u>Green Leaf Nursery v. E.I. DuPont De Nemours & Co.</u>, 341 F.3d 1292, 1300 (11th Cir. 2003). Because the clause did "not refer to related tort claims or to any and all claims or disputes arising out of settlement or arising out of the relationship of the parties," it called for the "application of the selected law to determine only the scope and effect of the release," and did not extend to related claims between the parties. <u>Id.</u>

Under this line of authority, the Agreement's choice-of-law provision must be construed narrowly since it governs only the Agreement and the rights of the parties "[t]hereunder," and does not reference claims "arising out of" the Agreement. As such, the Agreement's choice-of-law provision cannot extend to related tort claims between the parties. <u>See also</u> <u>Com. Disaster Recovery, LLC. v. Charter Landing Condo. Owners Ass'n, Inc.</u>, Case No. 1:21-CV-3363-CAP, 2022 WL 18459538, at *5 (N.D. Ga. July 22, 2022) (where a choice-of-law provision states only that Georgia law should govern the Agreement, it should not be read broadly to cover tort claims between the parties); <u>Osiris Therapeutics, Inc. v. MiMedx Grp., Inc.</u>, Case No. 1:19-CV-00857, 2020 WL 11192769, at *3 (N.D. Ga. Feb. 24, 2020) (finding that a choice-of-law provision stating that "[t]his Agreement shall be governed by and interpreted under the laws of the State of Delaware" only covered the agreement, and not related tort claims).

Where, as here, a contract's choice-of-law provision does not cover tort claims, courts should look to the forum state's choice-of-law rules. Georgia follows the doctrine of *lex loci delicti* in tort cases, pursuant to which "a tort action is governed by the substantive law of the state where the tort was committed." Dowis v. Mud Slingers, Inc., 279 Ga. 808, 809 (2005). The place where the tort was committed, or, "the *locus delicti,* is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place." Bullard v. MRA Holding, LLC, 292 Ga. 748, 750–51 (2013). See also Harvey, 311 Ga. at 813–14 (under *lex loci delicti*, a tort action is governed by the substantive law of "the place where the injury sustained was suffered rather than the place where the act was committed"); Risdon Enterprises, Inc. v. Colemill Enterprises, Inc., 172 Ga. App. 902, 903 (1984) (same quote).

Ms. Carrandi has lived in California throughout this action, and the damages she sustained as a result of NRS's attempts to enforce the facially invalid Non-Compete were suffered in California. Thus, California is the *locus delicti*, and Georgia's choice-of-law rules require that California law govern her Counterclaim. This should come as no surprise to NRS. Ms. Carrandi is a California citizen who is entitled to the protection of California law. NRS has long complied with

California's legal protections of its California employees, even where those protections differ from the rights of employees living in other states, as evidenced by the "California Specific Policies" sections of its Employee Handbooks. Doc. 65-1, at 85-91; Doc. 65-2, at 53-56; Doc. 65-3, at 61-72. Of course, "California Specific Policies" relate to rights which arise under California state law, so the choice-of-law provision did not deprive Ms. Carrandi of the rights afforded to California residents because those are not rights arising under the Agreement. The same remains true here.

The California legislature created a recourse for citizens whose employers wrongfully attempt to enforce void restrictive covenants against them, as NRS did, in the enactment of Cal. Bus. & Prof. Code § 16600.5(e). The Agreement's choice-of-law provision does not deprive Ms. Carrandi of that right. The district court erred in dismissing Ms. Carrandi's Counterclaim pursuant to Georgia law based on a contractual choice-of-law provision that did not extend to non-contractual claims, and that decision should be reversed.

## CONCLUSION

Having successfully defended herself from NRS's efforts to enforce a restrictive covenant that is void under Georgia law, Ms. Carrandi is now entitled to recovery under California law. This Court should reverse the dismissal of Ms. Carrandi's Counterclaim, and remand this case for a hearing on the damages to

which Ms. Carrandi is entitled as a result of NRS's efforts to enforce the facially

invalid Non-Compete against her.

Respectfully submitted this the 16th day of April, 2025.

*/s/ Mary Ellen Lighthiser*
Michael D. Flint
Georgia Bar No. 264725
Mary Ellen A. Lighthiser
Georgia Bar No. 105407
*Attorneys for Defendant/Appellant Lisa Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:  (678) 388-2680
E-mail:       mflint@mcclurelegal.com
                   mel@mcclurelegal.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains a total of 4,466 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on April 16, 2025.

*/s/ Mary Ellen Lighthiser*
Mary Ellen A. Lighthiser
Georgia Bar No. 105407
*Attorneys for Defendant/Appellant Lisa Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone: (678) 388-2680
E-mail:      mflint@mcclurelegal.com
                  mel@mcclurelegal.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 16, 2025, I served a copy of this APPELLANT'S OPENING BRIEF by filing it with the Court's CM/ECF system, which will automatically serve a copy on all attorneys of record.

Respectfully submitted this the 16th day of April, 2025.

*/s/ Mary Ellen Lighthiser*
Mary Ellen A. Lighthiser
Georgia Bar No. 105407
*Attorneys for Defendant/Appellant Lisa Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone: (678) 388-2680
E-mail: mflint@mcclurelegal.com
mel@mcclurelegal.com