# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

NETROADSHOW, INC.,

*Plaintiff-Appellee*,

v.

LISA CARRANDI

*Defendant-Appellant*.


_____

On Appeal from the United States District Court
for the Northern District of Georgia,
No. 1:23-cv-05697 (Judge Eleanor L. Ross)

_____

## APPELLEE'S ANSWER BRIEF
_____

KANA A. CAPLAN
TAYLOR A. CRESSLER
*Counsel of Record*
**KREVOLIN & HORST, LLC**
1201 W. Peachtree Street, NW
3500 One Atlantic Center
Atlanta, Georgia 30309
(404) 888-9700
(404) 888-9577 (facsimile)
caplan@khlawfirm.com
cressler@khlawfirm.com

*Counsel for Plaintiff-Appellee
NetRoadshow, Inc.*

May 16, 2025

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 26.1-1(a), counsel for appellee NetRoadshow, Inc. certifies that the following persons may have an interest in the outcome of this case:

1.    Baird, Courtney L., Former Counsel for Defendant-Appellant Lisa Carrandi;

2.    Caplan, Kana A., Counsel for Plaintiff-Appellee NetRoadshow, Inc.

3.    Carrandi, Lisa, Defendant-Appellant

4.    Cheung, Cynthia, C., Former Counsel for Plaintiff-Appellee NetRoadshow, Inc.

5.    Cressler, Taylor A., Counsel for Plaintiff-Appellee NetRoadshow, Inc.

6.    Dillingham & Murphy LLP, former law firm representing Plaintiff-Appellee NetRoadshow, Inc.

7.    Duane Morris LLP, former law firm representing Defendant-Appellant Lisa Carrandi;

8.    Flint, Michael D., Counsel for Defendant-Appellant Lisa Carrandi

9.    Gilliam Jr., Haywood S., United States District Court Judge for the Northern District of California, trial judge in associated case

10.    Hartley, Carla J., Former Counsel for Plaintiff-Appellee NetRoadshow, Inc.

11.    Krevolin & Horst, LLC, law firm representing Plaintiff-Appellee NetRoadshow, Inc.

12.    Lighthiser, Mary Ellen A., Counsel for Defendant-Appellant Lisa Carrandi

13.    Lucci, Deanna J., Former Counsel for Defendant-Appellant Lisa Carrandi

14.    McClure & Kornheiser, LLC, law firm representing Defendant-Appellant Lisa Carrandi;

15.    NetRoadshow, Inc. (Georgia, Delaware), Plaintiff-Appellee, no parent corporation or publicly-held corporation owns more than 10% of its stock.

16.    Ross, Eleanor L., United States District Court Judge for the Northern District of Georgia, trial judge.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

May 16, 2025

/s/ *Kana A. Caplan*
Kana A. Caplan

## STATEMENT REGARDING ORAL ARGUMENT

Appellee NetRoadshow, Inc., respectfully agrees with Appellant, Lisa Carrandi, that oral argument would be helpful. While this Court may decide this appeal based on the narrow issue of choice of law, to the extent that it decides to consider the application of the California state statute, this Court's determinations of the existence and interpretation of ambiguity in that statute could benefit greatly from live questioning of counsel. Further, oral argument would aid the development of a newer attorney. If granted, Taylor A. Cressler, a 2022 law school graduate in his second year of practice, will argue on behalf of NetRoadshow, Inc. on the issues of statutory interpretation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
      DISCLOSURE STATEMENT.................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT.................................................. i

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES......................................................................................... v

STATEMENT OF THE ISSUES ................................................................................. 1

STATEMENT OF THE CASE...................................................................................... 1

SUMMARY OF ARGUMENT.................................................................................... 6

STANDARD OF REVIEW .......................................................................................... 7

ARGUMENT .................................................................................................................. 9

I.     The trial court did not err in ruling that Ms. Carrandi's agreement to
     apply Georgia law to her employment relationship must be enforced........... 9

     A.     Ms. Carrandi incorrectly asserts the choice-of-law provision
          does not apply to adjudication of the Counterclaim. ........................... 9

          1.     The District Court's holding on the Employee Agreement
                  was limited only to the provision sought to be enforced—
                  the non-competition clause ....................................................... 9

          2.     The District Court correctly reasoned that because the
                  California Statute's cause of action is contingent on the
                  breach of contract action, the choice-of-law clause
                  applies to the Counterclaim analysis ......................................11

          3.     The Employee Agreement is broader than those in the
                    cases Ms. Carrandi cites........................................................... 13

     B.     Georgia courts would not apply California law to this dispute.......... 16

          1.     Georgia has a strong preference for applying its own law ...... 16

2.      Despite Ms. Carrandi's wishes, application of the California Statute would necessarily apply California law to contract interpretation and enforcement in direct violation of the choice-of-law provision................................... 17

C.      Ms. Carrandi's lex loci deliciti analysis is incorrect ......................... 19

1.      The application of lex loci deliciti is based on erroneous law and an unsupported assumption ........................................ 19

2.      Ms. Carrandi's lex loci delicti analysis is incorrect................ 20

II.     Even if it were allowed under choice-of-law principles, the California Statute, by its plain terms, does not apply to this dispute. ........................... 23

A.      The most plausible interpretation of the California Statute concludes that it cannot be applied extraterritorially to reach NetRoadshow.......................................................................... 24

1.      A plain reading of the California Statute does not allow it to reach this lawsuit................................................................. 25

2.      Interpretive canons require rejecting the "Universal Reading" and reading the California Statute to not apply to this lawsuit ......................................................................... 29

3.      No courts (including those in California) have applied the California Statute extraterritorially ......................................... 32

4.      The legislative purpose of the California Statute does not counsel extraterritorial application or support Ms. Carrandi's declared intent ......................................................... 37

B.      Constitutional dangers in allowing the Counterclaim to survive....... 39

1.      Federalism.............................................................................. 40

2.      Comity.................................................................................... 42

3.      Due Process............................................................................ 43

4.      The First Amendment. ........................................................... 45

CONCLUSION ....................................................................................................... 47

CERTIFICATE OF COMPLIANCE ..................................................... 48

CERTIFICATE OF SERVICE ............................................................. 49

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Advance Tech. Consultants, Inc. v. Roadtrac, LLC*,
  551 S.E.2d 735 (Ga. Ct. App. 2001) .................................................................11

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
  No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022) ...................13, 14, 15

*Am. Anesthesiology of Ga., LLC v. Northside Hosp., Inc.*,
  867 S.E.2d 531 (Ga. Ct. App. 2021) ...............................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................8, 19

*Auld v. Forbes*,
  848 S.E.2d 876 (Ga. 2020) .................................................................................21

*Bank of Jackson Cnty. v. Cherry*,
  980 F.2d 1362 (11th Cir. 1993) ..........................................................................45

*Beers v. Haughton*,
  34 U.S. 329 (1835) ..............................................................................................42

*Bittner v. United States*,
  598 U.S. 85 (2023) ..............................................................................................38

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ............................................................................................43

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ..........................................................................42

*Bowser v. Found. Bldg. Materials, LLC*,
  No. 8:24-cv-01643-DOC-SK, 2024 WL 4255057 (C.D. Cal. Sept.
  20, 2024) .......................................................................................................33, 36

*Brink v. Raymond James & Assocs., Inc.*,
  892 F.3d 1142, (11th Cir. 2018) ...........................................................................8

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  582 U.S. 255 (2017) ......................................................................................41, 43

*Brockett v. Spokane Arcades, Inc.,*
    472 U.S. 491 (1985) ........................................................................36

*Bullard v. MRA Holding, LLC,*
    740 S.E.2d 622 (Ga. 2013) .............................................................22

*Carr v. Kupfer,*
    296 S.E.2d 560 (Ga. 1982) .............................................................18

*Carrandi v. NetRoadshow, Inc.,*
    No. 3:24-cv-01092-HSG, 2024 WL 2261944 ...........................*passim*

*C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.,*
    No. 19-CV-00902 (KMM/DTS), 2024 WL 4333210 (D. Minn.
    Sept. 27, 2024) ..........................................................................34, 36

*Com. Disaster Recovery, LLC v. Charter Landing Condo. Owners Ass'n, Inc.,*
    No. 1:21-CV-3363-CAP, 2022 WL 18459538 (N.D. Ga. July 22, 2022)...........14

*Cook v. Gralike,*
    531 U.S. 510 (2001)...................................................................41, 42

*Cooper v. Meridian Yachts, Ltd.,*
    575 F.3d 1151 (11th Cir. 2009) .......................................................14

*CS-Lakeview at Gwinnett, Inc. v. Simon Prop, Grp., Inc.,*
    659 S.E.2d 359 (Ga. 2008) .............................................................18

*De Jonge v. Oregon,*
    299 U.S. 353 (1937)........................................................................45

*DeMartini v. Town of Gulf Stream,*
    942 F.3d 1277 (11th Cir. 2019)...................................................45, 46

*Dowis v. Mud Slingers, Inc.,*
    621 S.E.2d 413 (Ga. 2005) .............................................................22

*DraftKings Inc. v. Hermalyn,*
    732 F. Supp. 3d 84 (D. Mass. 2024) ..................................16, 33, 36

*Durham v. Stand-By Labor of Ga., Inc.,*
    198 S.E.2d 145 (Ga. 1973) .............................................................11

*Early v. MiMedx Grp., Inc.,*
    768 S.E.2d 823 (Ga. Ct. App. 2015) ................................................................. 10

*Edwards v. Arthur Andersen LLP,*
    189 P.3d 285 (Cal. 2008) ................................................................. 30

*Foley Bros. v. Filardo,*
    336 U.S. 281 (1949) ................................................................. 30

*Gordian Med., Inc. v. Vaughn,*
    No. 22-319 (MN), 2024 WL 1344481 (D. Del. Mar. 30, 2024) ................. *passim*

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.,*
    341 F.3d 1292 (11th Cir. 2003) ........................................ 13, 14, 15

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ................................................................. 41

*Harvey v. Merchan,*
    860 S.E.2d 561 (Ga. 2021) ............................................... 21, 22

*Howell Mgmt. Servs., LLC v. Vashisht-Rota,*
    No. D084575, 2025 WL 398377 (Cal. Ct. App. 4th Dist. Feb. 5,
    2025) ................................................................. 35

*Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.,*
    704 F.3d 927 (11th Cir. 2013) ................................................... 17

*Jimenez v. Dep't of Homeland Sec.,*
    119 F.4th 892 (11th Cir. 2024) .................................................. 25

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994) ........................................................... 31, 44

*Lazares v. Shopify (USA), Inc.,*
    No. 24-cv-07125-HSG, 2025 WL 1397504 (N.D. Cal. May 14,
    2025) ................................................................. 35

*Lozman v. City of Riviera Beach,*
    585 U.S. 87 (2018) ................................................................. 46

*Magnolia Petroleum Co. v. Hunt,*
    320 U.S. 430 (1943) ................................................................. 43

*Maiz v. Virani,*
253 F.3d 641 (11th Cir. 2001) ...........................................................24

*Marbury v. Madison,*
5 U.S. 137 (1803) .................................................................................15

*In re Marriage of Reuling,*
23 Cal. App. 4th 1428 (Cal. Ct. App. 1st Dist. 1994) .................44, 45

*Marshall v. Marshall,*
547 U.S. 293 (2006) .............................................................................40

*Mktg & Rsch. Couns., Inc. v. Booth,*
601 F. Supp. 615 (N.D. Ga. 1985) .....................................................11

*Moody v. Bache & Co.,*
570 F.2d 523 (5th Cir. 1978) ..............................................................19

*Motorsports of Conyers, LLC v. Burbach,*
892 S.E.2d 719 (Ga. 2023) .........................................................*passim*

*Myrick v. Fulton Cnty.,*
69 F.4th 1277 (11th Cir. 2023) .............................................................8

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
567 U.S. 519 (2012) .............................................................................31

*NFP Prop. & Cas. Servs., Inc. v. Alliant Ins. Servs., Inc.,*
No. 8:24-cv-00789-FWS-JDE, 2024 WL 4818801 (C.D. Cal. Oct.
23, 2024) .................................................................................34, 36, 46

*N.Y. Life Ins. Co. v. Head,*
234 U.S. 149 (1914)..............................................................................43

*Oman v. Delta Air Lines, Inc.,*
889 F.3d 1075 (9th Cir. 2018)..............................................................30

*Osiris Therapeutics, Inc. v. MiMedx Grp., Inc.,*
No. 1:19-cv-00857, 2020 WL 11192769 (N.D. Ga. Feb. 24, 2020)...................14

*People v. Lynch,*
552 P.3d 877 (Cal. 2024) .....................................................................31

*Poer v. FTI Consulting, Inc.,*
  No. 24-cv-04725-JSC, 2024 WL 4859085 (N.D. Cal. Nov. 20,
  2024) ....................................................................................34, 35, 36

*Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries,*
  353 F.3d 916 (11th Cir. 2003) .............................................43, 44

*Risdon Enters., Inc. v. Colemill Enters., Inc.,*
  324 S.E.2d 738 (Ga. Ct. App. 1984) ...........................................22

*Russo v. Fifth Third Bank,*
  634 Fed. App'x 774 (11th Cir. 2015) ...........................................15

*Sack v. Cessna Aircraft Co.,*
  676 Fed. App'x 887 (11th Cir. 2017) ...........................................14

*Siech v. Hobbs Grp., LLC,*
  198 Fed. App'x 840 (11th Cir. 2006) ...........................................10

*Simon v. Shearson Lehman Bros., Inc.,*
  895 F.2d 1304 (11th Cir. 1990) ...................................................15

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
  538 U.S. 408 (2003).....................................................................43

*Sturgeon v. Frost,*
  587 U.S. 28 (2019).......................................................................38

*Sunbeam Corp. v. Masters of Miami, Inc.,*
  225 F.2d 191 (5th Cir. 1955) .......................................................42

*Tracy Anderson Mind & Body, LLC v. Roup,*
  No. CV 22-04735 PSG, 2024 WL 3221737 (C.D. Cal. Mar. 20, 2024).............32

*Turner v. Wells,*
  879 F.3d 1254 (11th Cir. 2018) ...................................................17

*Turner v. Williams,*
  65 F.4th 564 (11th Cir. 2023) .......................................................8

*United States v. Campbell,*
  26 F.4th 860 (11th Cir. 2022) .......................................................8

*United States v. Palmer,*
  16 U.S. 610 (1818)........................................................................29, 30

*U.S. Term Limits, Inc. v. Thornton,*
  514 U.S. 779 (1995)........................................................................41, 42

*Upper Skagit Indian Tribe v. Lundgren,*
  585 U.S. 554 (2018)................................................................................8

*In re Walter Energy, Inc.,*
  911 F.3d 1121 (11th Cir. 2018) ...........................................................29

*Westerman v. FTI Consulting, Inc.,*
  No. 24-cv-04118-JCS, 2025 WL 256978 (N.D. Cal. Jan. 21, 2025).................35

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980)..............................................................................43

**Constitutional Provision, Statutes and Secondar Sources**

2023 Cal. Legis. Serv. Ch. 157 (S.B. 699) ............................................38

Cal. Bus. & Prof. Code § 16600 .....................................................*passim*

Cal. Bus. & Prof. Code § 16600.5 ..................................................*passim*

Cal. Civil Code § 3....................................................................................45

Fed. R. Civ. P. 12 .........................................................................*passim*

O.C.G.A § 1-3-9...............................................................................16, 17

O.C.G.A. § 13-8-50...................................................................................37

O.C.G.A § 51-1-8.......................................................................................19

O.C.G.A. § 51-7-81...................................................................................37

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012)....29

Joseph Story, *Commentaries on the Constitution of the United States* (3d ed. 1858)
  ..........................................................................................................41

U.S. Const. art. I, § 8, cl. 3.........................................................................41

U.S. Const. amend. I .................................................................................45

## STATEMENT OF THE ISSUES

This appeal presents four issues:

1. Whether the District Court erred in applying an Employee Agreement's choice-of-law provision selecting Georgia law to bar a California statutory counterclaim premised on the employer's attempted enforcement of the Employee Agreement.

2. Whether Cal. Bus. & Prof. Code § 16600.5 provides a cause of action against an employer not based in California.

3. Whether a damages action under Cal. Bus. & Prof. Code § 16600.5 may be sustained absent allegations of damages beyond attorneys' fees and costs.

4. Whether the cause of action in Cal. Bus. & Prof. Code § 16600.5 can be constitutionally applied to seek damages against a non-California employer filing suit outside of California to enforce a restrictive covenant that does not forbid providing services to a California employer.

## STATEMENT OF THE CASE

The vast majority of Ms. Carrandi's Statement of the Case is irrelevant for deciding this appeal. Despite Ms. Carrandi's apparent wishes to the contrary, *see* Appellant's Br. at 16 (discussing motions for summary judgment and the District

Court's related orders),[1] the District Court granted NetRoadshow, Inc.'s ("NetRoadshow") Motion to Dismiss, not Motion for Summary Judgment. *See* Doc. 79 at 16 (granting NetRoadshow's motion to dismiss Ms. Carrandi's Counterclaim); Doc. 82 at 14 (denying as moot NetRoadshow's motion for summary judgment on Ms. Carrandi's Counterclaim).

The major relevant facts,[2] therefore, are what can be gleaned from the pleadings: NetRoadshow is a Delaware corporation headquartered in Atlanta, Georgia, Doc. 1-1 ¶ 3 (Verified Complaint); Doc. 16 at 14 ¶ 1 (Ms. Carrandi's Counterclaim); Ms. Carrandi is a former employee of NetRoadshow, having worked for the company for eighteen years, who now resides in California, Doc. 1-1 ¶ 6; Doc. 16 at 15 ¶ 2; NetRoadshow and Ms. Carrandi entered an employment agreement (the "Employee Agreement") where the parties chose Georgia law to

---

[1] This brief cites to the CM-ECF-generated page numbers at the top of pages, and unless otherwise indicated, cites to the District Court's docket in Case No. 1:23-cv-05697-ELR.

[2] While the parties engaged in discovery prior to the District Court granting NetRoadshow's Federal Rule of Civil Procedure 12(b)(6) motion (filed pre-discovery), none of those uncovered facts could possibly change the District Court's correct conclusion that the Counterclaim, as pled, failed to state a claim for relief.

If this Court holds that factual development beyond the pleadings is necessary, NetRoadshow asserts that the minimal record produced in discovery clearly shows there is no dispute as to any material fact that Ms. Carrandi cannot succeed on her Counterclaim.

apply; *see* Doc. 1-1 at 23. The Employee Agreement contains a severability clause, whereby the parties agreed that:

> 10. General Provisions. In the event that any one or more of the provisions, or parts of any provisions, contained in the Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, the same shall not invalidate or otherwise affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. Specifically, but without limiting the foregoing in any way, each of the covenants of the parties to this Agreement contained herein shall be deemed and shall be construed as a separate and independent covenant.

*Id.*

NetRoadshow filed an action for breach of the Employee Agreement (which contains various restrictive covenants) along with attorneys' fees in Fulton County Superior Court on November 30, 2023. *See id.* at 12-15. NetRoadshow also sought a preliminary injunction enjoining Ms. Carrandi from violating certain restrictive covenants contained in the Agreement. *See generally id.* at 26-40. Ms. Carrandi removed the action to the United States District Court for the Northern District of Georgia ("District Court") on December 12, 2023. *See generally* Doc. 1.

On January 8, 2024, Ms. Carrandi filed an Answer to NetRoadshow's Complaint that contained a single Counterclaim. *See generally* Doc. 16. The Counterclaim alleged (a) that the restrictive covenants in the Employee Agreement are "void and unenforceable regardless of where and when the contract was signed"

under California law, *id.* at 16 ¶ 8; (b) that under California law, "NetRoadshow's attempt to enforce the restrictive covenant" in the Employee Agreement is a civil violation, *id.* ¶ 9; and (c) that—as a conclusion—Ms. Carrandi "has incurred actual damages, including attorneys' fees and costs of litigation," *id.* at 17 ¶ 10.[3] The California law under which Ms. Carrandi claims to have a cause of action came into effect on January 1, 2024—after NetRoadshow filed suit and seven days before Ms. Carrandi filed her Counterclaim. *See* Cal. Bus. & Prof. Code § 16600.5 ("California Statute"). NetRoadshow timely moved to dismiss the Counterclaim on January 29. *See generally* Doc. 25.

The District Court issued two orders on NetRoadshow's motion for preliminary injunction, both times correctly holding that Georgia law applied to the interpretation of the Employee Agreement. *See* Doc. 22 at 12 ("The Court finds that Georgia law controls" and ruling that the Employee Agreement is likely enforceable); *see also* Doc. 51 at 7 (reconsidering the grant of a preliminary injunction but still applying Georgia law as the applicable interpretive law).[4]

---

[3] NetRoadshow only focuses on Ms. Carrandi's claim for damages, since the District Court's grant of summary judgment to Ms. Carrandi on NetRoadshow's claims moots any plea for an injunction or declaratory relief. *See* Doc. 82 at 14.

[4] NetRoadshow has strenuously contested that the noncompete provision is unenforceable under Georgia law. *See generally* Doc. 55 (NetRoadshow's motion for reconsideration); Doc. 69 (NetRoadshow's response opposing Ms. Carrandi's motion for summary judgment). Regardless, the District Court was correct that even with an unenforceable restrictive covenant, the Counterclaim cannot survive.

Between the two preliminary injunction orders, Ms. Carrandi filed a motion to voluntarily dismiss her Counterclaim on February 12, 2024. *See generally* Doc. 35. Without waiting for the District Court to rule on that motion, Ms. Carrandi filed a complaint in the Superior Court of California for the County of Marin on February 21. *See* Def. NetRoadshow, Inc.'s Notice of Removal, *Carrandi v. NetRoadshow, Inc.*, No. 3:24-cv-01092 (N.D. Cal. Feb. 22, 2024) (hereinafter the "California Action").

After briefing, the United States District Court for the Northern District of California ("California District Court") granted NetRoadshow's motion to transfer the California Action to the District Court on May 17. *See Carrandi v. NetRoadshow, Inc.*, No. 3:24-cv-01092-HSG, 2024 WL 2261944, *3 (N.D. Cal. May 17, 2024). The California District Court found that Ms. Carrandi's complaint violated the claim-splitting doctrine because Ms. "Carrandi's claims against NetRoadshow in the California and Georgia actions are transactionally related" and because Ms. Carrandi attempted to "pursu[e] substantially the same claims in two federal fora." *See id.* at *2. The California District Court also found that the California Action violated the first to file rule. *See id.* at *3.

In late June/early July 2024, NetRoadshow and Ms. Carrandi filed cross-motions for summary judgment on Ms. Carrandi's Counterclaim, and Ms. Carrandi filed a motion for summary judgment on NetRoadshow's claims. *See generally* Doc.

65; Doc. 67. The District Court granted NetRoadshow's motion to dismiss Ms. Carrandi's Counterclaim on September 10, 2024. Doc. 79 at 16. The District Court denied as moot the cross-motions for summary judgment on the Counterclaim and granted Ms. Carrandi summary judgment on NetRoadshow's claims on January 7, 2025. *See* Doc. 82 at 14.

On February 6, 2025, Ms. Carrandi filed a notice of appeal seeking to appeal "the [District] Court's January 7, 2025 final order and judgment granting summary judgment in favor of NetRoadshow, Inc. on Ms. Carrandi's Counterclaim for violations of California law." Doc. 84 at 1. But the District Court did not grant NetRoadshow summary judgment. *See* Doc. 82 at 14 (denying NetRoadshow's summary judgment motion as moot). The District Court dismissed Ms. Carrandi's Counterclaim pursuant to Rule 12(b)(6). *See* Doc. 79 at 16. This is important because Ms. Carrandi attempts to insert disputed factual issues into her brief, *see, e.g.*, Appellant's Br. at 25, but the District Court did not address disputed factual issues, it ruled as a matter of law that Ms. Carrandi did not have a viable cause of action.

## SUMMARY OF ARGUMENT

This Court must affirm the District Court's dismissal of Ms. Carrandi's Counterclaim.

Ms. Carrandi agreed to apply Georgia law to all disputes related to the rights under her employment. She attempted to bring a claim arising solely under a recently

enacted California Statute as a Counterclaim. The California Statute only purports to create a cause of action for an employee when an employer attempts to enforce its rights under a restrictive covenant. The District Court correctly held that the California Statute does not apply to NetRoadshow's attempted enforcement of the Employee Agreement against Ms. Carrandi in a Georgia court—because Georgia law applies.

To hold otherwise would ignore longstanding choice-of-law principles under Georgia law and Georgia courts' longstanding enforcement of severability clauses. Further, even if Ms. Carrandi could overcome this substantial hurdle, a broad application of the California Statute to reach NetRoadshow here would be unconstitutional. Under bedrock principles of federalism, the state of California does not and cannot set the laws for the 49 other states.

Ms. Carrandi, further, makes no statutory interpretation argument in her principal brief. Even if Ms. Carrandi succeeds on all her arguments made, fundamental tenets of statutory interpretation—and courts in California that have addressed the issue—dictate that the California Statute offers Ms. Carrandi no succor.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for failure to state a claim *de novo. See Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023). A claim should be

dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R.

Civ. P. 12(b)(6). At the motion to dismiss stage, the Court must "accept all factual

allegations in the c[ounterclaim] as true and construe them in the light most favorable

to the [counter-]plaintiff." *Brink v. Raymond James & Assocs., Inc.*, 892 F.3d 1142,

1144 n.1 (11th Cir. 2018). But "to survive a motion to dismiss, a [pleading] must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted). Importantly here, even a well-pled claim can be dismissed on a "dispositive

issue of law." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1294 (11th Cir. 2023). This

Court has "discretion to affirm on any ground supported by the law and the record

that will not expand the relief granted below." *United States v. Campbell*, 26 F.4th

860, 879 (11th Cir. 2022) (internal quotation marks omitted) (quoting *Upper Skagit

Indian Tribe v. Lundgren*, 585 U.S. 554, 560 (2018)).

---

[5] As noted, the facts Ms. Carrandi introduces from discovery, s*ee* Appellant's Br. at
13, 15, 25-26, are irrelevant as the answer/counterclaim fails to state a claim
regardless of the facts as a matter of law.

# ARGUMENT

I. **The trial court did not err in ruling that Ms. Carrandi's agreement to apply Georgia law to her employment relationship must be enforced.**

A. **Ms. Carrandi incorrectly asserts the choice-of-law provision does not apply to adjudication of the Counterclaim.**

1. **The District Court's holding on the Employee Agreement was limited only to the provision sought to be enforced—the non-competition clause.**

In the Employee Agreement, the parties chose to apply Georgia law to govern all "the rights of Company and the Employee hereunder"—i.e., all issues related to Ms. Carrandi's employment. Doc. 1-1 at 23. The Employee Agreement also contains a severability clause, whereby the parties agreed that if any provision of the contract is ruled invalid, the Employee Agreement "shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein." *Id.*

Although the District Court ruled that "the Noncompete Provision of the Employee Agreement is void on its face", Doc. 51 at 12, it did ***not*** hold that the Employee Agreement itself was void. The Employee Agreement contains a variety of provisions that govern the employment relationship between Ms. Carrandi and NetRoadshow and has never been ruled invalid. *See* Doc. 1-1 at 22-24. Thus, regardless of the District Court's holding on the enforceability of the non-compete provision, the employment relationship continues to be governed by Georgia law.

Ms. Carrandi appears to assume that once Georgia law has been applied to deem a non-compete unenforceable, the whole contract becomes a legal nullity. *See*

Appellant's Br. at 20-21. This radical supposition finds no support in Ms. Carrandi's quoted authority and is contrary to both Georgia and—though irrelevant—California law. *See infra*; Cal. Bus. & Prof. Code § 16600 (only voiding contracts to "that extent" that they restrain trade as described).

She seems to confuse the concept of blue-penciling (which is not at issue here) with whether a contract is severable. Contract severability is governed by the parties' intent. *Early v. MiMedx Grp., Inc.*, 768 S.E.2d 823, 827 (Ga. Ct. App. 2015) ("It is well settled that the intent of the parties determines whether a contract is severable such that the remaining contract provisions will survive even if one or more provisions of the contract are void."). Where, as here, the contract contains a severability clause, that clause "indicates the intent of the parties where the remainder of the contract can exist without the void portion." *Id.* (internal quotation marks and citation omitted).

Ms. Carrandi cites two opinions that do not speak to the concepts at issue here and merely state that Georgia courts did not blue-pencil pre-2011 ***restrictive covenants***. *See* Appellant's Br. at 20 (quoting *Siech v. Hobbs Grp., LLC*, 198 Fed. App'x 840, 842 (11th Cir. 2006) (unpublished); *Am. Anesthesiology of Ga., LLC v. Northside Hosp., Inc.*, 867 S.E.2d 531, 537 (Ga. Ct. App. 2021)). Ms. Carrandi's final authority on this point also does not hold that a single void restrictive covenant brings down an entire contract, just the other restrictive covenants. *See* Appellant's

Br. at 21 (quoting *Advance Tech. Consultants, Inc. v. Roadtrac, LLC*, 551 S.E.2d 735, 736-37 (Ga. Ct. App. 2001)); *but see Mktg & Rsch. Couns., Inc. v. Booth*, 601 F. Supp. 615, 617 (N.D. Ga. 1985) (recognizing that Georgia's anti-blue-penciling preference does not even require that confidentiality agreements fail alongside an unenforceable restrictive covenant in the same contract (citing *Durham v. Stand-By Labor of Ga., Inc.*, 198 S.E.2d 145, 149 (Ga. 1973))). None of these cases stand for the proposition that once a court declares a contractual provision void, the choice-of-law provision and other non-restrictive covenant provisions of the contract are also void as Ms. Carrandi contends.

> **2. The District Court correctly reasoned that because the California Statute's cause of action is contingent on the breach of contract action, the choice-of-law clause applies to the Counterclaim analysis.**

Ms. Carrandi attempts to avoid this conclusion by contending that her claim is somehow outside the Employee Agreement—even though the California Statute purports to govern the very language of the Employee Agreement.

The District Court was unpersuaded. In its order denying summary judgment on the Counterclaim as moot, the District Court correctly reasoned as to Ms. Carrandi's argument presented here, "NetRoadshow's right to enforce the terms of the [Employee] Agreement does arise under the Agreement and, thus, is governed by Georgia law. Carrandi's Counterclaim not only necessarily implicates that right, but also her California-law based cause of action exists ***only because of***

***NetRoadshow's attempt to enforce its right*** under the Agreement." Doc. 82 at 9 (emphasis added).

Ms. Carrandi's continued insistence that her Counterclaim falls outside of the Employee Agreement's choice of law provision is specious at best. *See* Appellant's Br. at 19-23. Through her Counterclaim, Ms. Carrandi seeks to punish NetRoadshow for enforcing its contractual rights under the Employee Agreement.[6] And the Employee Agreement specifically says that the "Agreement ***and the rights of Company*** and Employee hereunder shall be governed by and construed in accordance with the laws of the State of Georgia." Doc 1-1 at 23 (emphasis added). Because, as she admits, her Counterclaim is solely based on NetRoadshow's breach of contract action, *see* Doc. 16 at 16 ¶¶ 8-9, her Counterclaim arises "[t]hereunder" and is governed by Georgia law under the contract's plain language.

Contracts would be mere paper tigers if one of the rights under them was not the right to sue for their enforcement. Ms. Carrandi's purported cause of action under California law arises *only* by virtue of the agreement governed by Georgia law. As

---

[6] Ms. Carrandi filed both the Counterclaim and a nearly identical action in California state court. Once removed, the United States District Court for the Northern District of California transferred the action back to the District Court in Georgia, reasoning that "[b]oth claims arise out of Carrandi's employment with Defendant and specifically her Employee Agreement." *See Carrandi v. NetRoadshow, Inc.*, No. 24-cv-01092-HSG, 2024 WL 2261944, at *2 (N.D. Cal. May 17, 2024) (citations and internal quotation marks omitted).

such, this claim "arose from" the contractual relationship, and Georgia law applies. *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, *9 (11th Cir. Feb. 14, 2022) (distinguishing *Green Leaf*, and reasoning that not giving the phrase "rights and liabilities" in the choice-of-law clause any meaning would improperly render the words superfluous).

### 3. The Employee Agreement is broader than those in the cases Ms. Carrandi cites.

Ms. Carrandi points to two cases from this Court and two unpublished district court opinions that she claims *require* not applying the Georgia choice-of-law provision. Appellant's Br. 23-24. All of the opinions are inapposite. Even if Ms. Carrandi's contention that a cause of action under the California Statute is a tort, which it is not, none of these cases address a situation where the purported "tort" is seeking to enforce a contract governed by Georgia law.

The choice-of-law provision at issue in *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292 (11th Cir. 2003), was much narrower. *Id.* at 1300 ("[t]his release shall be governed and construed in accordance with the laws of the State of Delaware. . . ."). This Court held, applying Florida law, that the narrow clause did not control a fraudulent inducement claim. *Id.* at 1301. Here, to the

contrary, the Employee Agreement specifically says that Georgia law also governs the parties' rights. Doc. 1-1 at 23; *see also Boeing*, 2022 WL 433457, *9.[7]

In *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151 (11th Cir. 2009), this Court held that the choice-of-law provision there **_applied_** to third-party claims for indemnity, contribution, and equitable subrogation. *Id.* at 1162-63. *Cooper* cannot possibly control here. All it says is that, on the one hand, choice-of-law clauses like that in *Green Leaf* (narrower than the Employee Agreement) "will not encompass related tort claims" and, on the other hand, choice-of-law clauses like that in *Cooper* (admittedly broader than the Employee Agreement) govern any actions "connected to the agreement." *Id.* This says nothing about what choice-of-law provisions that sit between those two poles cover.[8]

---

[7] Another panel of this Court has cautioned against applying *Green Leaf*'s reasoning to broader choice-of-law clauses. *See Sack v. Cessna Aircraft Co.*, 676 Fed. App'x 887, 890 n.2 (11th Cir. 2017) (unpublished).

[8] The two unpublished district court opinions did not deal with causes of action intertwined with the contract action (as is the case here). *See* Appellant's Br. at 24 (citing *Com. Disaster Recovery, LLC v. Charter Landing Condo. Owners Ass'n, Inc.*, No. 1:21-CV-3363-CAP, 2022 WL 18459538 (N.D. Ga. July 22, 2022) (involving a conversion claim, a common law tort that by definition would be outside the bounds of any contract); *Osiris Therapeutics, Inc. v. MiMedx Grp., Inc.*, No. 1:19-cv-00857, 2020 WL 11192769 (N.D. Ga. Feb. 24, 2020) (involving tortious interference, conspiracy to breach contract, and unfair competition claims—common law torts that may be tangentially related to a contract, but by their very nature must involve acts outside the contract's contemplation).

This Court has addressed choice-of-law provisions in the middle ground and has found that they do encompass tort claims. *See Boeing*, 2022 WL 433457, *9. In *Russo v. Fifth Third Bank*, 634 Fed. App'x 774 (11th Cir. 2015) (unpublished), this Court held that a choice-of-law clause that applied to the "rights, obligations, [or] liabilities arising under" the contract was broad enough to capture the fraud and negligent misrepresentation claims alleged there. *Id.* at 776-77.[9] The Employee Agreement's choice-of-law clause is much closer to that in *Russo* than to that in *Green Leaf*.

Further, even assuming the Counterclaim is tort-like in some respects, it—unlike, say fraud—is intimately and necessarily bound up in a breach of contract action. The cause of action is only available—as relevant here—when an employer "attempts to enforce a **contract**." *See* Cal. Bus. & Prof. Code § 16600.5(d) (emphasis added). For a court to determine if the cause of action is available, it must also determine whether the contract "is void" under the chapter of California law. *Id.* This

---

[9] At the very least, by specifically calling for Georgia law to apply to the parties' rights under the Employee Agreement, the choice-of-law provision requires application of Georgia law to the Counterclaim under Georgia's choice-of-law rules. "[W]here there is a legal right, there is also a legal remedy by suit or action at law." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (citation omitted). NetRoadshow has a right to avoid competition under the Employee Agreement, the remedy (ie, suing for enforcement) is governed by Georgia law. *See Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1320 (11th Cir. 1990) ("rule in Georgia of lex fori controls all matters affecting only the remedy" (citation omitted)).

inherently requires contractual interpretation, including acknowledgment of the choice-of-law clause.

Courts that considered this issue have consistently concluded that a choice of law provision in an employment contract controls, not the California Statute. *Gordian Med., Inc. v. Vaughn*, No. 22-319 (MN), 2024 WL 1344481, *9 (D. Del. Mar. 30, 2024) (addressing the exact issue here, concluding that Delaware law and not the California Statute controlled because the employment agreements "specify that [] Delaware law will govern their disputes."); *DraftKings Inc. v. Hermalyn*, 732 F. Supp. 3d 84, 124 (D. Mass. 2024) (enforcing the Massachusetts choice-of-law provision in an employment contract over the employee's argument that the California Statute should apply since he was based there).

### B.     Georgia courts would not apply California law to this dispute.

#### 1.     Georgia has a strong preference for applying its own law.

The Georgia Supreme Court has made clear how it would rule on the applicability of California law in a case such as this. In *Motorsports of Conyers, LLC v. Burbach*, a unanimous Supreme Court of Georgia held that "Georgia law remains the touchstone for determining whether a given restrictive covenant is enforceable in our courts, *even where the contract says another state's law applies*." 892 S.E.2d 719, 720 (Ga. 2023) (emphasis added); *see also* O.C.G.A § 1-3-9 ("The laws of other states . . . shall have no force and effect of themselves within this state further than .

. . is recognized by the comity of states. The courts shall enforce this comity . . . so long as its enforcement is not contrary to the policy or prejudicial to the interests of this state."). *Burbach* involved caselaw under the Georgia Restrictive Covenants Act ("GRCA"), but the *Burbach* Court explained that the primacy of Georgia law (and the public policy in favor of enforcing reasonable restrictive covenants) existed both before and after the GRCA. *Burbach*, 892 S.E.2d at 720.

The Supreme Court of Georgia dictates that courts should ignore foreign state law—even where (unlike here) the contract at issue ***explicitly says the foreign law should apply***—where that foreign state's law contradicts Georgia public policy. Here, California law must be ignored where the Employee Agreement chooses Georgia law.[10]

> **2.  Despite Ms. Carrandi's wishes, application of the California Statute would necessarily apply California law to contract interpretation and enforcement in direct violation of the choice-of-law provision.**

Ms. Carrandi concedes that the non-compete agreement is governed by Georgia law. *See* Appellant's Br. at 22. She argues, however, that the Court erred in not also applying California law.

---

[10] "Where the highest [state] court . . . has spoken on the topic, [a federal court] follow[s] its rule. . . . Where that court has not spoken, however, [the federal court] must predict how the highest court would decide th[e] case." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citations omitted). And in a diversity case, such as this, the choice-of-law rules of the forum state, Georgia here, control. *See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013).

But Ms. Carrandi's claim that "the Counterclaim did not seek to apply California law to invalidate the Non-Compete," *id.* at 19, is completely divorced from the text of the California Statute. Ms. Carrandi makes no argument and cites no authority for the suggestion that the California Statute can work in tandem with local law.

As already discussed, the California Statute purports to grant a cause of action against an employer who "attempts to enforce a contract that is void under this chapter." Cal. Bus. & Prof. Code § 16600.5(d). It does not say, "attempts to enforce a contract that is void under applicable local law," or something to that effect. Therefore, the California Statute necessarily requires that a court apply California law to interpret the contract.

This is in direct violation of longstanding Georgia cases, upholding choice-of-law provisions in contracts. *Burbach*, 892 S.E.2d at 720 ("Georgia courts generally honor" the parties' choice unless the choice of foreign law violates Georgia policy); *CS-Lakeview at Gwinnett, Inc. v. Simon Prop, Grp., Inc.*, 659 S.E.2d 359, 362 (Ga. 2008); *Carr v. Kupfer*, 296 S.E.2d 560, 562 (Ga. 1982) ("Absent a contrary public policy [otherwise requiring application of Georgia law], this court will normally enforce a contractual choice of law clause.").

### C. Ms. Carrandi's lex loci deliciti analysis is incorrect.

#### 1. The application of lex loci deliciti is based on erroneous law and an unsupported assumption.

As discussed, *supra* Part I.A, Ms. Carrandi does not cite any apposite authority for the proposition that the choice-of-law provision can be disregarded. But even if she could overcome this large hurdle, Ms. Carrandi cannot show that the California Statute is a tort. *See* Appellant's Br. at 22.

Under the plain text of the California Statute, at most, it is a contract/tort hybrid claim. *See infra* Part II.A.1. If Ms. Carrandi's interpretation of Georgia's definition of tort is correct, however,[11] her Counterclaim fails for another reason. Under Georgia law, a right of action for a tort does not arise until the alleged tortfeasor violates "a private duty [created by statute or contract], accompanied by damage." O.C.G.A. § 51-1-8. Beyond a conclusion, Ms. Carrandi has alleged no damages. *See* Doc. 16 at 17 ¶ 10; *but see Iqbal*, 556 U.S. at 678.[12] Ms. Carrandi's

---

[11] Ms. Carrandi's sole case authority for her proposition is *Moody v. Bache & Co.*, 570 F.2d 523, 529 (5th Cir. 1978). The former Fifth Circuit, as an aside, stated that a particular statutory private right of action—one under the Commodities Exchange Act—"would be in the nature of a tort action" to reach the conclusion that plaintiff *could not recover* due to a lack of causation, which is typical of a tort action. The actions here and in *Moody* themselves are also distinguishable in that the *Moody* cause of action sought recovery against a "person [] mak[ing] untrue statements or omissions of material fact in connection with the purchase or sale of any security." *Id.* at 525. Unlike the Counterclaim, this cause of action is directly and obviously analogous to a common law tort: fraud.

[12] If the Court would like to look at the facts in the record, the Court will find that Ms. Carrandi produced no evidence of damages either.

contention that her attorneys' fees are her damages is not sustainable under the text of the California Statute. *Compare* Cal. Bus. & Prof. Code § 16600.5(e)(1) (granting cause of action for injunctive relief and actual damages), *with id.* § 16600.5(e)(2) (allowing recovery of attorneys' fees and costs to ***otherwise prevailing*** employees).

### 2. Ms. Carrandi's lex loci delicti analysis is incorrect.

If the California Statute applies to this relationship at all, *see infra* Part II, if Ms. Carrandi is right that the choice-of-law provision does not bar the Counterclaim, if the California Statute is indeed a tort, and if Ms. Carrandi adequately pled entitlement to relief, the Counterclaim was still properly dismissed under the lex loci deliciti test.

Ms. Carrandi's interpretation of Georgia's choice-of-law rule, lex loci delicti, is that the location of where the injury was suffered controls. Appellant's Br. at 25. Before discussing why this interpretation is not supported by Georgia law—or the authority Ms. Carrandi cites—Ms. Carrandi is factually incorrect. She jumps to the conclusion that because Ms. Carrandi was harmed and Ms. Carrandi lives in California, the only possible location the injury could have been suffered is California. *Id.*

To the extent any cognizable injury was suffered and alleged, the harm was clearly sustained in Georgia. The only well-pled "damages" Ms. Carrandi has suffered are attorneys' fees. *See supra* Part I.C.1. Even if that could sustain a claim

under the California Statute, Ms. Carrandi has only suffered harm by paying fees to her *Georgia* attorneys and paying costs into a *Georgia* court. Her alleged harm, therefore, was sustained in Georgia. In response, Ms. Carrandi can only offer the *ipse dixit* that the "damages she sustained . . . were suffered in California." Appellant's Br. at 25.

Further, Georgia's lex loci delicti test does not purely focus on where the harm was suffered, as Ms. Carrandi suggests. Ms. Carrandi cites to *Harvey v. Merchan*, 860 S.E.2d 561 (Ga. 2021). *See* Appellant's Br. at 25. *Harvey* involved a suit for sexual abuse—absent a contract, obviously—that occurred in Georgia and Quebec. *See Harvey*, 860 S.E.2d at 565. The *Harvey* Court explained that under "lex loci delicti, a tort action is generally governed by the substantive law of the place where the tort was committed." *Id.* at 567. "The place where a tort was committed is 'the place where the injury sustained was suffered rather than the place where the act was committed,' or, in other words, 'it is the *place where the last event necessary to make an actor liable for an alleged tort takes place*.'" *Id.* (emphasis added) (quoting *Auld v. Forbes*, 848 S.E.2d 876, 879 (Ga. 2020)).[13]

---

[13] The *Harvey* Court also reaffirmed that "the law of the state in which the action is brought" governs "*remedial questions*." *Id.* at 567 (emphasis added).

The other case Ms. Carrandi cites offers little different.[14] *See* Appellant's Br. at 25 (quoting *Bullard v. MRA Holding, LLC*, 740 S.E.2d 622 (Ga. 2013)). *Bullard* also points to the "last event necessary to make an actor liable." *Bullard*, 740 S.E.2d at 625 (quoting *Risdon Enters., Inc. v. Colemill Enters., Inc.*, 324 S.E.2d 738, 740 (Ga. Ct. App. 1984)). While the Supreme Court of Georgia looked to the plaintiff's domicile (Georgia), *id.*, the Court made clear that the measure of damages in the misappropriation of likeness context was related to the defendant's "advertising efforts," and the distribution of a video without plaintiff's permission throughout the country, including in Georgia. *Id.* at 625-28.

The query is not where the injury was sustained. The proper question is, where was the last act committed that completed the tort? Indeed, in applying the facts of the case, the *Harvey* Court asked where the last event occurred, not where the injury was sustained. *See Harvey*, 860 S.E.2d at 568. Here, the last (and only) act committed to complete the tort—if the California Statute is a tort—was done in Georgia. NetRoadshow filed this lawsuit in the Superior Court of Fulton County. *See* Doc. 1-1. If, for some reason, the filing of the lawsuit was not the last event, it must be Ms. Carrandi's hiring of lawyers, an event that also took place in Georgia. And if other damages are a necessary element of the California Statute's supposed "tort,"

---

[14] All *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413 (Ga. 2005), stands for, relevant here, is that Georgia follows the lex loci delicti approach.

and thus the "last event necessary," then Ms. Carrandi has not adequately alleged (nor produced evidence of) any such damages.[15]

Therefore, even if the California Statute applies to the relationship between NetRoadshow and Ms. Carrandi, if Ms. Carrandi is right that the choice-of-law provision does not bar the Counterclaim, if the California Statute is indeed a tort, and if Ms. Carrandi adequately pled entitlement to relief, the Counterclaim was still properly dismissed under the lex loci deliciti test. This Court should affirm.

## II. Even if it were allowed under choice-of-law principles, the California Statute, by its plain terms, does not apply to this dispute.

As discussed above, the District Court properly found that California law "cannot be applied in this case" because Georgia law applies to the resolution of the Counterclaim as the parties agreed in the Employee Agreement and Georgia choice-of-law rules govern. Doc. 79 at 16.

The District Court therefore avoided answering the interpretive question of whether the California Statute could give Ms. Carrandi a cause of action against

---

[15] NetRoadshow does not quite understand Ms. Carrandi's final argument. *See* Appellant's Br. at 25-26. It appears she argues that because NetRoadshow purportedly followed California law in one respect, it subjected itself to California law in all respects. To the extent the facts are relevant at all, Ms. Carrandi never argues (nor could she) that (a) she received the handbooks, (b) the handbooks applied to her, (c) the California sections of the handbooks applied to her, or (d) that the handbooks contained any information about California restrictive covenant law.

NetRoadshow at all.[16] *See* Doc. 79 at 15-16. Ms. Carrandi argues that the District Court's conclusion was wrong. Though she is incorrect, *see supra* Part I.A-B, merely winning the argument on the Employee Agreement's choice-of-law provision does not result in a victory for Ms. Carrandi.

Yet, that is where she stops arguing. If the Employee Agreement's choice-of-law provision does not require the application of Georgia law to the Counterclaim, this Court must determine whether the California Statute reaches this relationship at all (otherwise, the Counterclaim was still properly dismissed). Ms. Carrandi offers no argument that the California Statute *does* reach into Georgia, yet NetRoadshow squarely presented that issue to the District Court. *See, e.g.*, Doc. 25-1 at 3, 5.[17]

A.    **The most plausible interpretation of the California Statute concludes that it cannot be applied extraterritorially to reach NetRoadshow.**

Ms. Carrandi does not offer a statutory interpretation analysis in her opening brief. *See generally* Appellants' Br. While the District Court did not offer much by way of statutory interpretation either, *see generally* Doc. 79, reversal of the

---

[16] Conversely, if this Court wishes to affirm the District Court on the ground that the California Statute does not give Ms. Carrandi a cause of action against NetRoadshow, this Court need not reach the question whether the choice-of-law clause bars the Counterclaim.

[17] *See Maiz v. Virani*, 253 F.3d 641, 674 (11th Cir. 2001) (refusing to consider appellants' arguments raised for the first time in the reply brief).

Counterclaim's dismissal—what Ms. Carrandi asks—requires interpreting the California Statute.

Statutory interpretation starts with the plain text. *See Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 910 (11th Cir. 2024). Because one of the plain readings of the California Statute—the one Ms. Carrandi, by implication, must advocate—tramples on the United States's Constitution's federal system, NetRoadshow analyzes the plain text to show that the most natural reading of the statute does not provide for application to this dispute, and then equips the Court with other interpretive tools in the event the Court finds that interpreting the California Statute requires a look beyond the plain text. These tools include the expressed legislative purpose of the California Statute and a survey of courts that have interpreted this nascent law.

1. **A plain reading of the California Statute does not allow it to reach this lawsuit.**

The California Statute, which came into effect January 1, 2024 (after NetRoadshow filed its complaint, *see* Doc. 1-1), states in full:

> (a) Any contract that is void under this chapter is unenforceable regardless of where and when the contract was signed.

> (b) An **employer** or former employer shall not attempt to enforce a contract that is **void under this chapter** regardless of whether the contract was signed and **the employment was maintained outside of California**.

(c) An employer shall not enter into a contract with an employee or prospective employee that includes a provision that is void under this chapter.

(d) An employer that enters into a contract that is void under this chapter or attempts to enforce a contract that is **void under this chapter** commits a civil violation.

(e)(1) An employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both.

(2) In addition to the remedies described in paragraph (1), a prevailing employee, former employee, or prospective employee in an action based on a violation of this chapter shall be entitled to recover reasonable attorney's fees and costs.

Cal. Bus. & Prof. Code § 16600.5 (emphasis added). To begin, one must attempt to define (by reference or otherwise) the two underlined words and phrases.

First, "void under this chapter" most clearly refers to the first section in the chapter, which states, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a). We will come back to this, but for now, we note its extreme breadth.

Second, "employer" is ambiguous from its plain text in the one relevant respect here. California's Business and Professions Code does not define the word "employer" in a way that applies to §§ 16600 & 16600.5. The text does not indicate whether "employer" refers to (a) any employer anywhere, (b) employers with employees based in California, or (c) employers based in California.

That being said, the context of the California Statute takes option (b) off the table. Lest a court read the California Statute too narrowly, the California Legislature made clear that its bar on enforcement of contracts void under California law applies "regardless of whether . . . the employment was maintained outside of California." The text clearly states that this statute is not just to protect employees in California.

Perhaps the California Statute is not to protect employees in California, but rather as a limitation on the actions of California employers. This is a reasonable reading in light of the California Statute's applicability regardless of whether employment was maintained outside of California.[18] But what about the first option above? Surely the language of both sections 16600.5 and 16600 is broad enough to support the "Universal Reading." Yes, but that reading becomes silly very quickly after dashing down the rabbit hole.

Under *that* plain textual reading, this new California Statute not only usurps power from the federal government, the governments of 49 other states, and the governments of other sovereign nations; but it also purports to reach into every one of those jurisdictions to provide a cause of action against an employer for petitioning

---

[18] The reasons stated *infra* Part II.A.2-4, also support this or a variation of this reading.

the local courts for redress.[19] Put another way, imagine an employer based in Italy hires an employee in South Africa and enters into a non-competition agreement choosing Brazilian law and venue. The agreement is enforceable under the law of all three countries. But California says, "No." If the Italian company attempts to enforce the agreement against the South African employee in a Brazilian court, the employee can countersue because California voids "every contract" restraining employment "regardless of whether the contract was signed and the employment was maintained outside of California." Surely this is not the most natural reading of the California Statute.

Ms. Carrandi's rejoinder would likely be that this Court need not read the California Statute *that* broadly. But in addition to the reasons that follow, the plain text of the California Statute admits of no more reasonable limitation. It cannot be read to only apply to California employees; for reasons of interpretive canons, it *can*

---

[19] Importantly, the California Statute seemingly provides this cause of action regardless of the enforceability of a contract in the jurisdiction in which the court sits or under the law actually governing the restrictive covenant.

be read to only apply to California employers; and it facially applies universally. There are no other textual limitations available.

### 2. Interpretive canons require rejecting the "Universal Reading" and reading the California Statute to not apply to this lawsuit.

Because the California Statute contains ambiguity, we must turn to interpretive canons. *See In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018). Three lend themselves to this discussion—one facially and two as-applied.

#### (a) The presumption against extraterritorial application counsels against an expansive interpretation.

Facially, absent explicit directive to the contrary—there is none—the California Statute must be read not to apply extraterritorially.[20] *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts § 43, p. 268 (2012) (describing *statuta suo clauduntur territorio, nec ultra territorium disponunt*). Chief Justice Marshall examined a similar issue in the context of an act of Congress over 200 years ago:

> The words of the section are in terms of unlimited extent. The words '[an employer and every contract],' are broad enough to comprehend every human being. But general words must not only be limited to cases within the jurisdiction of the state, but also to those objects to which the legislature intended to apply them. Did the legislature intend to apply these words to the subjects of a foreign power . . .?

---

[20] To be sure, there is language directing the California Statute to be applied regardless of where the *employee* is located, but not regardless of where the *employer* is located.

*United States v. Palmer*, 16 U.S. 610, 631 (1818); *see also Foley Bros. v. Filardo*, 336 U.S. 281, 285 (1949) ("The canon of construction [] teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. . . ."); *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (recognizing the presumption against extraterritorial application to California statutes).[21]

Here, the presumption against extraterritorial application dictates rejection of a California Statute interpretation that applies to employers outside of California. While the California Statute appears at first glance to apply anywhere, none of the broad language constitutes a clear indication by the California Legislature to apply the California Statute to *employers* extraterritorially.[22]

---

[21] To the extent the location of where the conduct that creates liability occurs is relevant, *see Oman*, 889 F.3d at 1079, it is apparent from the pleadings that NetRoadshow "attempt[ed] to enforce" the Employee Agreement in Georgia, not California. *See generally* Doc. 1-1.

[22] Indeed, Cal. Bus. & Prof. Code § 16600(b)(1) & (c) contain two statements emphasizing how broadly courts ought to interpret that section, but both address breadth over the substance of employment contracts, not breadth over covered employers. *See also Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 288 (Cal. 2008) (specifically referenced in the code section and involving an employer based in Los Angeles, California).

(b)     The presumption against retroactivity counsels
against applying the California Statute to NetRoadshow.

The canon against retroactivity applies to bar application of the California Statute against NetRoadshow. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("[T]he presumption against retroactive legislation is deeply rooted in [American] jurisprudence, and embodies a legal doctrine centuries older than our Republic."). A private cause of action, Cal. Bus. & Prof. Code § 16600.5, only came into being on January 1, 2024. NetRoadshow filed its complaint attempting to enforce the Employee Agreement on November 30, 2023 (and Ms. Carrandi removed the action to the District Court on December 12, 2023). The act the California Statute purports to make a civil violation is "attempt[ing] to enforce a contract that is void under this chapter." Cal. Bus. & Prof. Code § 16600.5(d). Absent an explicit statement that the California Statute ought to apply retroactively—there is none—it is presumed to apply only prospectively. *See People v. Lynch*, 552 P.3d 877, 886 (Cal. 2024). When NetRoadshow did the action that Ms. Carrandi claims is a civil violation, there was no statute making it so.

(c)     The canon of constitutional doubt requires
avoiding the "Universal Reading."

"[I]t is well established that if a statute has two possible meanings, one of which violates the Constitution, courts should adopt the meaning that does not do so." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 562 (2012). As discussed

*infra* Part II.B, reading the California Statute so broadly to affect NetRoadshow would violate the United States Constitution. As such, this Court should avoid these issues by opting for the perfectly plausible reading that does not violate the Constitution.

### 3. No courts (including those in California) have applied the California Statute extraterritorially.

The California Statute is still so new that, at the time of this briefing, it has only been mentioned in fourteen identifiable "cases" in Westlaw. Four of those relate to this or its related action and can be put to the side.[23] The thrust of the analyses in the other ten cases is instructive.

1. *Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-04735 PSG, 2024 WL 3221737 (C.D. Cal. Mar. 20, 2024): Involved a California-based employer, *id.* at *1, and did not reach relevant discussion of the California Statute because the court denied the employee leave to file counterclaims under it. *Id.* at *3.

2. *Vaughn*, 2024 WL 1344481, *9: Addressed the exact issue here, concluding that Delaware law (not the California Statute) controlled

---

[23] *See NetRoadshow, Inc. v. Carrandi*, No. 1:23-CV-05697-ELR, 2024 WL 947802 (N.D. Ga. Jan. 24, 2024); *Carrandi v. NetRoadshow, Inc.*, No. 24-cv-01092-HSG, 2024 WL 2261944 (N.D. Cal. May 17, 2024); *NetRoadshow, Inc. v. Carrandi*, No. 1:23-CV-05697-ELR, 2024 WL 5005431 (N.D. Ga. Sept. 10, 2024); *NetRoadshow, Inc. v. Carrandi*, No. 1:23-CV-05697-ELR, 2025 WL99754 (N.D. Ga. Jan. 7, 2025).

because the employment agreements "specify that [] Delaware law will govern their disputes." *Id.* at *9.

3. *Hermalyn*, 732 F. Supp. 3d 84: Involved an employee located in California invoking the California Statute. In *Hermalyn*, the employee had filed a declaratory judgment action *first* in California. *See id.* at 94. The court recognized the different public policies between California and Massachusetts regarding restrictive covenants, s*ee id.* at 107, and the Massachusetts choice-of-law provision in the contract. *See id.* at 106. In rejecting the employee's motion to dismiss for *forum non conveniens*, the Massachusetts court reasoned, "Where Massachusetts law *governs the breach of contract claims* at issue in this case, California does not have a local interest in adjudicating this matter." *Id.* at 124 (emphasis added).

4. *Bowser v. Found. Bldg. Materials, LLC*, No. 8:24-cv-01643-DOC-SK, 2024 WL 4255057 (C.D. Cal. Sept. 20, 2024): Granted defendant's motion to transfer action to a court in Tennessee because the employment agreement "provides for the laws of Tennessee to govern the Agreement," despite "all of Plaintiff's claims involv[ing] violations of the California Business and Professions Code," including § 16600.5. *Id.* at *3.

5. *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, No. 19-CV-00902 (KMM/DTS), 2024 WL 4333210 (D. Minn. Sept. 27, 2024): Only referred to the California Statute in terms of the employer's speculation that it might be used against it, *see id.* at *4-5, and otherwise applied Minnesota law to interpret the contracts that contained choice-of-law provisions (choosing Minnesota). *See id.* at *7.

6. *NFP Prop. & Cas. Servs., Inc. v. Alliant Ins. Servs., Inc.*, No. 8:24-cv-00789-FWS-JDE, 2024 WL 4818801 (C.D. Cal. Oct. 23, 2024): The California court there struck the portions of the defendant's § 16600.5 counterclaim that alleged harm from plaintiff's litigation activity (including pre-litigation cease-and-desist letters). *Id.* at *11-12. In so holding, the California court reasoned that imposing liability on plaintiff-employer for exercising its right of petition violates the state's anti-SLAPP statute. *Id.*

7. *Poer v. FTI Consulting, Inc.*, No. 24-cv-04725-JSC, 2024 WL 4859085 (N.D. Cal. Nov. 20, 2024): The California court denied the employee's motion for preliminary injunction (presumably pursuant to the California Statute) to block the employer's enforcement action. *Id.* at *13. The court reasoned after noting the employer was not California-based, *id.* at *8, that "implicit in the provision is that the employer who

34

cannot enforce the noncompete is a California-based employer. To interpret the provision otherwise would mean section 16600.5 protects a non-California citizen working for a non-California-based employer at an office outside California. There is no indication the California legislature intended such a result, let alone that it has the authority to require such a result for non-California employers." *Id.* at *11.

8. *Westerman v. FTI Consulting, Inc.*, No. 24-cv-04118-JCS, 2025 WL 256978 (N.D. Cal. Jan. 21, 2025): The California court stayed the action (which included a suit by the employee under the California Statute) pending the resolution of a first-filed enforcement action in Washington, D.C. by the employer. *Id.* at *1, *3.

9. *Howell Mgmt. Servs., LLC v. Vashisht-Rota*, No. D084575, 2025 WL 398377 (Cal. Ct. App. 4th Dist. Feb. 5, 2025) (unpublished): The California court merely mentioned the California Statute without substantive discussion. *Id.* at *5 n.6.

10. *Lazares v. Shopify (USA), Inc.*, No. 24-cv-07125-HSG, 2025 WL 1397504 (N.D. Cal. May 14, 2025): Without any discussion of the parties' domiciles, the court merely mentioned the California Statute in its reasoning before dismissing plaintiff-employee's claims. *Id.* at *4-5.

In sum, the courts that have grappled with the California Statute unanimously (when this issue comes up) apply choice-of-law contract provisions. *See Vaugh*, 2024 WL 1344481, *9; *Hermalyn*, 732 F. Supp. 3d at 106; *Bowser*, 2024 WL 4255057, *3; *C.H. Robinson*, 2024 WL 4333210, *7. Such outcomes contradict the "Universal Reading," because a choice-of-law provision would lack relevance if the California Statute indeed applied to everyone, everywhere.

More tellingly, what two District Courts in California have said about the California Statute directly mirrors arguments NetRoadshow makes in the instant brief and that NetRoadshow had previously made in the District Court. *See, e.g.*, Doc. 25-1 at 3, 5; Doc. 67-1 at 15.[24] First, the California Statute should not be used to hold an employer liable under the California Statute solely for exercising its right to petition guaranteed by the First Amendment to the United States Constitution. *See NFP Prop.*, 2024 WL 4818801, *11-12. Second, the California Statute must be limited to only affect California-based employers. *See Poer*, 2024 WL 4859085, *11.[25]

---

[24] As the Supreme Court has explained when lightly deferring to lower courts' constructions of state law, "district courts and courts of appeals are better schooled in and more able to interpret the laws of their respective States." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 500 (1985). Though not binding, the California federal courts' interpretations of the California Statute—being familiar with California law—is persuasive.

[25] Much of Ms. Carrandi's argument is premised on the faulty concept that a holding that the non-compete is void is "internally inconsistent," Appellant's Br. at 21, with

**4. The legislative purpose of the California Statute does not counsel extraterritorial application or support Ms. Carrandi's declared intent.**

Ms. Carrandi's *ipse dixit* is that the purpose of the California Statute is to protect California-based employees. *See* Appellant's Br. at 17, 25-26. As already discussed, the text does not support that interpretation. *See supra* Part II.A.1.

---

a holding that the severed choice-of-law provision and Georgia public policy requires application of Georgia law to the Counterclaim. *See* Appellant's Br. at 19-22. Ms. Carrandi does not adequately explain how the holdings are internally inconsistent. It is perfectly plausible that Georgia—a state that encourages the enforcement of *some* non-competes, *see Burbach*, 892 S.E.2d at 724—would protect an employer's right to attempt to enforce a contract even if that contract provision is later determined to be unenforceable. *See* O.C.G.A. § 13-8-50.

Not only does Georgia, unlike California, encourage enforcement of *some* restrictive covenants, but Georgia also requires a showing of "malice" or lack of "substantial justification" before it will find someone liable for their litigation activity. O.C.G.A. § 51-7-81; *but see* Doc. 22 (District Court initially found the Employee Agreement likely enforceable under Georgia law); Doc. 55 (further enumerating the reasons NetRoadshow believed the Employee Agreement to be enforceable in good faith). Under Ms. Carrandi's interpretation of Georgia policy, Georgia's encouragement of employers enforcing reasonable restrictive covenants becomes caught in a quantum quandary. An employer has a restrictive covenant with an employee (say, in a box). Without opening the box (i.e., filing an enforcement action and obtaining judicial review), that restrictive covenant is both reasonable and unreasonable at the same time. Ms. Carrandi appears to concede that Georgia policy encourages enforcement of reasonable restrictive covenants. *See* Appellants' Br. at 19. In other words, Ms. Carrandi must admit Georgia policy encourages opening the box. Ms. Carrandi contends, however, that this policy evaporates and allows for application of the retributory California Statute if the unlucky employer heeds Georgia's encouragement, opens the box, and discovers the restrictive covenant to be unreasonable. This is preposterous.

Indeed, the expressed purpose in the enacting statute does not support that interpretation either.[26] Rather, the primary purpose appears to be protecting California employers' ability to hire employees to perform work in California. *See* 2023 Cal. Legis. Serv. Ch. 157 (S.B. 699) § 1(d) ("[A]s the market for talent has become national and remote work has grown, *California employers* increasingly face the challenge of employers outside of California attempting to prevent the hiring of former employees." (emphasis added)); *id.* § 1(e) ("California's public policy against restraint of trade law trumps other state laws *when an employee seeks employment in California*" (emphasis added); *id.* § 1(f) ("California has a strong interest in protecting the freedom of movement of persons whom *California-based* employers wish to employ *to provide services in California*" (emphasis added)).

The Employee Agreement (and the enforcement of it) could not possibly have frustrated California's apparent purpose of protecting California-based employers' ability to hire employees to perform work in California.[27] The Employee Agreement does not attempt to prevent Ms. Carrandi from providing services in California at

---

[26] NetRoadshow does not rely on this expressed purpose, but it does discount Ms. Carrandi's suggestion that the California Statute was enacted to protect people like her. While the California legislature's findings within the statute do not override the plain language, *see Sturgeon v. Frost*, 587 U.S. 28, 57 (2019), they can be used to shed light on the meaning of ambiguous statutory terms, *see Bittner v. United States*, 598 U.S. 85, 98 n.6 (2023).

[27] Regardless of whether this purpose is supported by the text.

all. *See* Doc. 1-1 at 24 (defining the restricted area as around New York, Atlanta, and London). NetRoadshow sought enforcement because it believed Ms. Carrandi to be working remotely for its New York-based competitor as Ms. Carrandi had worked remotely for NetRoadshow's New York office. *See id.* ¶ 41; Appellant's Br. at 10.

The only plausible plain readings of the California Statute either require universal application of the Statute or do not reach this lawsuit. Multiple interpretive canons (presumption against extraterritorial application, presumption against retroactivity, and constitutional doubt) require choosing the latter interpretation over the former. Every court to address the issue so far, has indicated that the latter is the more natural interpretation. Finally, a middle-ground interpretation that does not violate the United States Constitution, but still reaches this lawsuit—as Ms. Carrandi requires—is not supported by the text nor even the stated purpose of the California Statute. As such, if this Court finds the choice-of-law provision in the Employee Agreement does not bar the Counterclaim, this Court should interpret the California Statute to not reach this lawsuit at all.

### B.    Constitutional dangers in allowing the Counterclaim to survive.

This brief ends by more deeply exploring how quickly the California Statute violates the United States Constitution and its bedrock principles if applied to NetRoadshow here. These arguments do not require this Court to find the California Statute unconstitutional. Rather, they put color on the constitutional doubt argument

to show that this Court should interpret the California Statute in the way (a) supported by the text and (b) that avoids invalidity under the Constitution. *See supra* Part. II.A.2 If the Court finds that the plain text of the California Statute requires application to this dispute, however, for the reasons that follow, the California Statute is unconstitutional as-applied.

### 1. Federalism

The Universal Reading of the California Statute Ms. Carrandi requires, purports to reach out and invalidate a Georgia contract entered into by a corporation headquartered in Georgia and an employee who moved to California after entering into the Agreement. California law apparently reaches out again to grant that employee a cause of action against that same Georgia employer for daring to attempt to enforce that Georgia contract in a court in Georgia. This blatantly offends bedrock principles of federalism.

Speaking about jurisdiction, the United States Supreme Court has stated that jurisdiction—otherwise provided by federal law—"cannot be defeated by the extraterritorial operation of a [state] statute . . ., even though it created the right of action." *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (alterations in original) (internal quotation marks and citation omitted). Speaking again to jurisdiction, the Supreme Court has made clear that "restrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are a

consequence of territorial limitations on the power of the respective States.'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 263 (2017) (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

The exact same principles underlying these jurisdictional questions also underlie the question of whether the California Statute can apply extraterritorially here. The California legislature can no more control what happens outside of the state than California courts can exercise extraterritorial jurisdiction over a non-Californian with no connection to the state. Further, as a federal court, this Court need not countenance California's unconstitutional attempt (if indeed, it does attempt) to divest the federal government of its power over relations and commerce between and among the various states. *See* U.S. Const. art. I, § 8, cl. 3.

Further, the Supreme Court has adopted the principle that "'the states can exercise no powers whatsoever, which exclusively spring out of the existence of the national government, which the constitution did not delegate to them.' . . . Simply put, '[n]o state can say, that it has reserved, what it never possessed.'" *Cook v. Gralike*, 531 U.S. 510, 519 (2001) (quoting 1 Joseph Story, *Commentaries on the Constitution of the United States* § 627 (3d ed. 1858)); *see also U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 802 (1995). "Because any state authority to regulate [contracts in another state within the union] could not precede the[ union's] very creation by the Constitution, such power 'had to be delegated to, rather than reserved

by, the States.'" *Cook*, 531 U.S. at 522 (quoting *Thornton*, 514 U.S. at 804). California could, therefore, have no claim to a power to regulate Georgia contracts or their enforcement. The Supreme Court has long adhered to the principle that federal courts ought not to allow state laws to usurp federal power. *See Beers v. Haughton*, 34 U.S. 329, 359 (1835) ("State laws cannot control the exercise of the powers of the national government, or in any manner limit or affect the operation of the process or proceedings in the national courts.").

### 2. Comity

Comity between the states requires this Court to reject California law here. As the former Fifth Circuit decisively declared decades ago, "It is settled law that no foreign tort action contrary to a strong public policy of the forum state can be maintained." *Sunbeam Corp. v. Masters of Miami, Inc.*, 225 F.2d 191, 198 (5th Cir. 1955).[28]

As already explained, Georgia has a strong public policy in favor of enforcing reasonable restrictive covenants. Georgia Supreme Court precedent is clear, especially where, as here, a party attempts to utilize an out-of-state cause of action and not just an out-of-state defense.

---

[28] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all published cases of the former Fifth Circuit decided prior to the close of business on September 30, 1981).

"A State cannot punish a defendant for conduct that may have been lawful where it occurred." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996) ("We think it follows from these principles of state sovereignty and comity that a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States."); *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 440 (1943) ("For Texas is without power to give extraterritorial effect to its laws."). That the California Statute cannot override Georgia's own state law and public policy here "is so obviously the necessary result of the Constitution that it has rarely been called in question and hence authorities directly dealing with it do not abound." *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980) ("The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States. . . .").

### 3. Due Process

Additionally, applying the California Statute to punish NetRoadshow for attempting to enforce the Employee Agreement would violate NetRoadshow's rights under the Due Process clauses of the Fifth and Fourteenth Amendments. *See, e.g.*, *Bristol-Meyers Squibb*, 582 U.S. at 263 (explaining that improperly exercising personal jurisdiction over a defendant, even when a state has a strong interest in doing so, implicates a defendant's due process rights); *Prewitt Enters., Inc. v. Org.*

*of Petroleum Exporting Countries*, 353 F.3d 916, 924–25 (11th Cir. 2003) (stating that constitutional due process requires notice and a basis for exercising personal jurisdiction over a defendant).

Personal jurisdiction addresses the surprise defendants may face with being hailed into a judicial forum they do not expect due to lack of connection with the jurisdiction. Here, the same constitutional considerations apply to the surprise NetRoadshow faces defending against a cause of action it did not expect due to lack of connection with the enacting jurisdiction. Georgia provides the interpretive law for the Employee Agreement; the District Court is in Georgia. California has no place.

"The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation. . . ." *Landgraf*, 511 U.S. at 266. Indeed, "[s]ince the early days of th[e Supreme] Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent." *Id.* at 270.

California case law remains in accord. *See, e.g., In re Marriage of Reuling*, 23 Cal. App. 4th 1428, 1439 (Cal. Ct. App. 1st Dist. 1994) ("There is a strong presumption that statutes are to operate prospectively, absent a clear indication to

the contrary."). California statutory law is too. *See* Cal. Civil Code § 3 ("No part of it is retroactive, unless expressly so declared.").

NetRoadshow filed its Verified Complaint and Motion for Preliminary Injunction on November 30, 2023. *See* Doc. 1-1. The only cause of action under which Ms. Carrandi seeks relief did not come into effect until January 1, 2024. *See* Cal. Bus. & Prof. Code § 16600.5.

Therefore, NetRoadshow "attempt[ed] to enforce [the Employee Agreement]" before California ever supposedly declared it a civil violation. *See id.* To read the new California law as applying to NetRoadshow's past conduct of initiating this suit would violate NetRoadshow's due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

### 4. The First Amendment

Finally, NetRoadshow has a First Amendment right to petition the government. *See* U.S. Const. amend. I; *see also De Jonge v. Oregon*, 299 U.S. 353, 364 (1937) (incorporating the First Amendment into the Fourteenth). The Eleventh Circuit has made clear, "[t]he First Amendment right to petition the government for a redress of grievances includes a right of access to the courts." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993). Indeed, "[t]he right to petition the government for a redress of grievances is 'one of the most precious of the liberties safeguarded by the Bill of Rights,' and is 'high in the hierarchy of First

Amendment values.'" *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting *Lozman v. City of Riviera Beach*, 585 U.S. 87, 101 (2018)).

The California Statute purports to make an employer civilly liable for merely attempting to enforce a noncompete covenant. NetRoadshow has only attempted to enforce the Employee Agreement to the extent that it has prosecuted this action (including a cease-and-desist letter in 2023) and defended against the action Ms. Carrandi improperly filed in California. *See Carrandi v. NetRoadshow, Inc.*, No. 3:24-cv-01092-HSG, 2024 WL 2261944, *3 (N.D. Cal. May 17, 2024); *see also NFP Prop. & Casualty Servs., Inc. v. Alliant Ins. Servs., Inc.*, No. 8:24-cv-00789-FWS-JDE, 2024 WL 4818801 (C.D. Cal. Oct. 23, 2024). Therefore, at least as applied here, the new California law violates the First Amendment by providing for damages liability simply for the act of petitioning a court for the redress of a grievance.

# CONCLUSION

Because the choice-of-law provision in the Employee Agreement governs the Counterclaim or because Georgia's choice-of-law rules otherwise prevent the application of California law, this Court should affirm. Alternatively, because the California Statute, read in a way consistent with its plain text and the Constitution, does not reach NetRoadshow, this Court should affirm.

Respectfully submitted,

*/s/ Kana A. Caplan*
KANA A. CAPLAN
TAYLOR A. CRESSLER
*Counsel of Record*
KREVOLIN & HORST, LLC
1201 W. Peachtree Street, NW
3500 One Atlantic Center
Atlanta, Georgia 30309
(404) 888-9700
(404) 888-9577 (facsimile)
caplan@khlawfirm.com
cressler@khlawfirm.com

*Counsel for Plaintiff-Appellee NetRoadshow, Inc.*

May 16, 2025

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,038 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32-4.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.


May 16, 2025

/s/Kana A. Caplan
Kana A. Caplan

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Kana A. Caplan
Kana A. Caplan