# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## Appeal No. 25-10388-B

## NETROADSHOW, INC.,

### Plaintiff/Counterclaim Defendant/Appellee,

### versus

## LISA CARRANDI,

### Defendant/Counterclaimant/Appellant.

## APPELLANT'S REPLY BRIEF

### On Appeal from the United States District Court
### for the Northern District of Georgia, Atlanta Division
### District Court Docket No. 1:23-CV-05697-ELR

**MICHAEL D. FLINT**
Georgia Bar No. 264725
**MARY ELLEN A. LIGHTHISER**
Georgia Bar No. 10547
**McClure & Kornheiser, LLC**
**6400 Powers Ferry Road**
**Suite 150**
**Atlanta, Georgia 30339**
**Telephone: (678) 388-2680**

**Attorneys for Defendant/Counterclaimant/Appellant**

*NetRoadshow, Inc. v. Lisa Carrandi, No. 25-10388-B*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... 1

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................... 3

INTRODUCTION ……………………………………………………………... 5

REPLY TO APPELLEE'S ARGUMENT ……………........................................ 6

    A. NetRoadshow Did Not Have a Right to Enforce a Void Restrictive Covenant
………………………………………………………………….….. 6

    B. *Lex Loci Delicti* Requires the Application of California Substantive Law
…............................................................................................... 8

    C. Ms. Carrandi is Entitled to Recovery Under California Law …………..… 10

    D. Constitutional Principles Do Not Prohibit the Application of California Law
Against Employers of California Residents ……………………………… 14

CONCLUSION ................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Am. Anesthesiology of Georgia, LLC v. Northside Hosp., Inc.</u>, 362 Ga. App. 350

(2021) ......................................................................................16

<u>Atlanta Ctr. Ltd. v. Hilton Hotels Corp.</u>, 848 F.2d 146 (11th Cir. 1988) ...............16

<u>Auld v. Forbes</u>, 309 Ga. 893 (2020) ........................................................ 8

<u>Bowen v. Porsche Cars, N.A.</u>, Inc., 561 F. Supp. 3d 1362 (N.D. Ga. 2021) ..........16

<u>Bullard v. MRA Holding, LLC</u>, 292 Ga. 748 (2013) ............................................. 9

<u>Edwards v. Arthur Andersen LLP</u>, 44 Cal.4th 937 (2008) ...............................11, 16

<u>Gallagher Benefit Servs., Inc. v. Campbell</u>, 528 F. Supp. 3d 1326 (N.D. Ga. 2021)

.........................................................................................16

<u>Harvey v. Merchan</u>, 311 Ga. 811 (2021) ................................................... 8

<u>Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co.</u>, 770 F. App'x 475 (11th Cir.

2019) .......................................................................................10

<u>Licudine v. Cedars-Sinai Med. Ctr.</u>, 3 Cal. App. 5th 881 (2016) ...........................10

<u>Motorsports of Conyers, LLC v. Burbach</u>, 892 S.E.2d 719 (Ga. 2023) ................. 7

<u>Veritas v. Cable News Network, Inc.</u>, 121 F.4th 1267 (11th Cir. 2024) ................ 9

<u>Wilson v. Home Depot USA, Inc.</u>, 288 Ga. App. 582 (2007). ..............................10

***Statutes***

Cal. Bus. & Prof. Code § 16600 ......................................................11, 13

Cal. Bus. & Prof. Code § 16600.5.......................................................10, 11, 12, 13

**Other Authorities**

2023 Cal. Legis. Serv. Ch. 157 (S.B. 699) § 1.......................................................12

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, firms, partnerships, and corporations that are known to have an actual or potential interest in the outcome of this appeal:

1. Baird, Courtney L., Former Counsel for Defendant-Appellant Lisa Carrandi

2. Caplan, Kana A., Counsel for Plaintiff-Appellee NetRoadshow, Inc.

3. Carrandi, Lisa, Defendant-Appellant

4. Cressler, Taylor A., Counsel for Plaintiff-Appellee NetRoadshow, Inc.

5. Duane Morris LLP, Former law firm representing Defendant-Appellant Lisa Carrandi

6. Flint, Michael D., Counsel for Defendant-Appellant Lisa Carrandi

7. Krevolin & Horst, LLC, Law firm representing Plaintiff-Appellee NetRoadshow, Inc.

8. Lighthiser, Mary Ellen A., Counsel for Defendant-Appellant Lisa Carrandi

9. Lucci, Deanna J., Former Counsel for Defendant-Appellant Lisa Carrandi

10. McClure & Kornheiser, LLC, Law firm representing Defendant-Appellant Lisa Carrandi

11. NetRoadshow, Inc. (Georgia, Delaware), Plaintiff-Appellee, no parent corporation or publicly-held corporation owns more than 10% of its stock

12. Ross, Eleanor L., United States District Court Judge for the Northern District of Georgia, trial judge

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## I.    __INTRODUCTION__

In its voluminous response brief, Appellee NetRoadshow, Inc. ("NRS") engaged in a rambling, esoteric analysis that largely has nothing to do with this appeal, while dancing around the only questions controlling its resolution: (1) Does Georgia law give employers a "right" to attempt to enforce a restrictive covenant that is unenforceable under Georgia law? and (2) If not, is an employer of out-of-state employees subject to the laws enacted by its employees' home states?

The first question necessarily follows from NRS's argument that Ms. Carrandi has no right to assert California counterclaims because the Agreement's choice of law provision mandates that Georgia law govern the parties' rights "[t]hereunder." The undisputed fact is that NRS did *not* have a right to enforce the Noncompete under Georgia law. Thus, its attempt to enforce the void restriction was not a "right" it had under the Agreement, and Ms. Carrandi's state law claim for damages caused by NRS's wrongful enforcement attempt did not implicate the choice of law provision.

NRS's insistence that its constitutional rights would be violated if Ms. Carrandi were allowed to assert a California claim against it leads us to the second question. As shown by its Employee Handbooks, NRS has complied with California law as it relates to its California employees when it comes to wage and hour law, break times, medical leave, and the like. Presumably, NRS has complied

with these laws because it recognizes that failure to do so could subject it to civil penalties and liability. If applying California's wage and hour laws to out-of-state employers of California residents does not violate "bedrock principles" of the U.S. Constitution, why would California's law on restrictive covenants do so?

Moreover, principles of federalism and comity offer no protection to NRS, since the Agreement is governed by Georgia law as it existed in 2005, when it was executed. At that time, Georgia had a strong public policy *against* enforcement of restrictive covenants, as expressed in the Georgia Constitution and statutory law. That public policy, which is completely consistent with the current policy of California, does not prevent the imposition of civil liability on a Georgia employer who unsuccessfully attempted to enforce a nearly 20-year-old, facially-overbroad restrictive covenant to inhibit the lawful employment of a California resident.

## II.    <u>REPLY TO APPELLEE'S ARGUMENT & CITATION OF AUTHORITY</u>

### A. *NRS Did Not Have a Right to Enforce a Void Restrictive Covenant.*

NRS argues that "Ms. Carrandi seeks to punish NetRoadshow for enforcing its contractual rights under the Employee Agreement." (Appellee's Br., at 12.) However, this argument ignores the trial court's ruling that NRS *did not have* the contractual right to enforce the Noncompete under Georgia law. Ms. Carrandi does not seek to punish NRS "for enforcing its contractual rights"; NRS had no

contractual right to the relief it sought. Nonetheless, Ms. Carrandi incurred substantial damages in the course of defending herself from NRS's attempts to obtain relief that it had no legal right to obtain. Under her own state's law, she is entitled to recover those damages, which include legal fees and expenses.

NRS's discussion of legal authority holding that Georgia law decides the enforceability of a restrictive covenant in a Georgia forum are inapposite, since the Noncompete's enforceability is not before this Court. See Appellee's Br., at 16-17, citing Motorsports of Conyers, LLC v. Burbach, 892 S.E.2d 719, 720 (Ga. 2023). The Northern District of Georgia has ruled that the Noncompete is "void on its face" under Georgia law, and that ruling was not appealed. Thus, NRS's reliance on case law regarding the Noncompete's enforceability is irrelevant to this appeal.

To be abundantly clear, Ms. Carrandi does not argue that California law applied to invalidate the Noncompete in the first place. If the Noncompete had been enforceable under Georgia law, then *of course* NRS would have had a legal right to enforce it. But once the district court ruled that the Noncompete was void, the question of whether NRS had a right to enforce that provision under Georgia law was conclusively decided, and there were no more pending questions about the parties' rights under the Agreement.[1] The choice of law provision simply told the

---

[1]     While NRS also asserted a breach of contract claim against Ms. Carrandi under the Agreement's confidentiality provision, the district court granted

parties which state's law governed interpretation of the contract. It did not reach beyond the contract to give NRS rights that it did not otherwise have under Georgia law, nor did it deprive Ms. Carrandi of a private right of action arising under her own state's law. In the absence of a controlling contractual provision governing the law applicable to that private right of action, general choice of law provisions apply. In Georgia, that requires applying the doctrine of *lex loci delicti*.

### B. Lex Loci Delicti Requires the Application of California Substantive Law.

NRS's contention that Ms. Carrandi has misstated the law on *lex loci delicti* is confounding. On one page, NRS admits that the Supreme Court of Georgia has held that "[t]he place where a tort was committed is 'the place where the injury sustained was suffered rather than the place where the act was committed.'" Appellee's Br., at 21, citing <u>Harvey v. Merchan</u>, 311 Ga. 811 (2021). Then, on the very next page, NRS argues that "[t]he query is not where the injury was sustained. The proper question is, where was the last act committed that completed the tort?" (Appellee's Br., at 22.) This is an exact inversion of the law, as quoted on the previous page of Appellee's Brief, and held repeatedly in longstanding black letter Georgia law. <u>See, e.g.,</u> <u>Auld v. Forbes</u>, 309 Ga. 893, 894 (2020) ("The place where the tort was committed, or, the locus delicti, is the place where the injury sustained

---

summary judgment on that claim. NRS did not claim that Ms. Carrandi had breached any other provision of the Agreement.

was suffered, rather than the place where the act was committed . . . ."); <u>Bullard v. MRA Holding, LLC</u>, 292 Ga. 748, 750–51 (2013) (same quote).

There is no real dispute as to where the injury was suffered. Ms. Carrandi could not have suffered any injury in Georgia, since she lives in California and did not even visit Georgia during the pendency of this case. Contrary to NRS's assertions, the fact that Ms. Carrandi's lawyers are located in Georgia is irrelevant. (Appellee's Br., at 22.) Ms. Carrandi's lawyers do not have any claims for damages, and Ms. Carrandi does not seek recovery for any injury sustained by her lawyers. She is seeking recovery of damages *she* sustained while living in California, which include but are not limited to attorneys' fees and legal expenses incurred in the defense of the underlying action. These damages could *only* have been sustained in her state of residence. <u>See, e.g.</u>, <u>Veritas v. Cable News Network, Inc.</u>, 121 F.4th 1267, 1274 n.10 (11th Cir. 2024) (in multistate defamation case, "'the place of the wrong' is the state or states where the plaintiff is domiciled"); <u>Bullard</u>, 292 Ga. at 751 (in commercial appropriation of likeness claim where the initial video was shot in Florida and distributed nationally, the injury was sustained in Georgia, since that is where she lived and "where she would have sustained any injury that resulted from the distribution of her image").

Moreover, the Court should disregard NRS's argument that Ms. Carrandi has not submitted sufficient evidence of damages, since under both states' law

"damages are presumed to flow from a tortious act, and a plaintiff may be awarded damages without proof of any specific amount." Wilson v. Home Depot USA, Inc., 288 Ga. App. 582, 585 (2007). See Licudine v. Cedars-Sinai Med. Ctr., 3 Cal. App. 5th 881, 891–92 (2016) (general damages are "implied by law" and may be "inferred from the nature of the injury" itself).

In any event, the sufficiency of Ms. Carrandi's damages evidence is not properly before this Court because the district court did not rule on it. If the Court finds that that an evaluation of damages evidence is necessary to the resolution of this case, it should remand the case back to the district court to rule on the issue. For now, there is nothing for the Court to review, since "[a]ppellate review of what the district court did is largely an error-correcting function," and thus appellate courts "ordinarily do not decide in the first instance issues not decided below." Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co., 770 F. App'x 475, 480 (11th Cir. 2019). That is especially true where "resolution of the issues turns on factual disputes, as well as legal disagreements." Id.

### C. Ms. Carrandi is Entitled to Recovery Under California Law.

NRS's efforts at statutory construction attempt to manufacture confusion and ambiguity where there is none. Ms. Carrandi's counterclaim arose under Cal. Bus. & Prof. Code § 16600.5(e), which creates a private right of action entitling an employee to recovery of damages and attorneys' fees whenever an employer

commits a civil violation under subsection (d) by "enter[ing] into a contract that is void under this chapter or attempt[ing] to enforce a contract that is void under this chapter commits a civil violation." As used in this statute, "void under this chapter" is a descriptive term referring to Cal. Bus. & Prof. Code § 16600(a), which holds that, with some exceptions, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

Cal. Bus. & Prof. Code § 16600(b)(1) instructs that "[t]his section shall be read broadly, in accordance with Edwards v. Arthur Andersen LLP (2008) 44 Cal.4th 937." In Edwards, the Supreme Court of California held that "our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility," and that "[t]he law protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.'" Edwards, 44 Cal. 4th at 946. The Court went on to explain that Section 16600 protects "the important legal right of persons to engage in businesses and occupations of their choosing." Id.

In light of this clear statement of law and policy, there can be no serious doubt that Section 16600.5 is intended to provide California employees with a private right of action when their employers attempt to enforce restrictive covenants against them, "regardless of whether the contract was signed and the

employment was maintained outside of California." Cal. Bus. & Prof. Code §
16600.5(b). The policy focus on protecting the rights of California employees to
pursue lawful employment belies NRS's unfounded speculation that "[p]erhaps the
California Statute is not to protect employees in California, but rather as a
limitation on the actions of California employers." (Appellee's Br., at 27. <u>See also</u>
<u>id.</u> at 38, contending that "the primary purpose appears to be protecting California
employers' ability to hire employees to perform work in California").

Contrary to NRS's argument, nothing in this Code Section purports to limit
the applicability of this law to benefit California employers, nor is the word
"employer" remotely ambiguous. Nonetheless, if the Court is to consider the
California legislature's policy statements as described in Senate Bill 699, that
source also does not support NRS's argument that the legislative intent was to
benefit employers. In fact, in passing Senate Bill 699, the California legislature
specifically stated that the reason for the bill's enactment was that "[e]mployers
who pursue frivolous noncompete litigation has a chilling effect on employee
mobility." 2023 Cal. Legis. Serv. Ch. 157 (S.B. 699) § 1(a). It further stated that
"California courts have been clear that California's public policy against restraint
of trade law trumps other state laws when an employee seeks employment in
California, ***even if the employee had signed the contractual restraint while living***

**outside of California and working for a non-California employer**." <u>Id.</u> at § 1(e) (emphasis supplied).

In light of this legislative purpose, Section 16600.5 clearly covers situations like these, where a California employee's right to pursue lawful employment is impeded by the efforts of an out-of-state employer to enforce a restrictive covenant that is void under *both* states' law. NRS's long-winded analysis of a potential "Universal Reading" of the statute that could apply to all employer/employee relationships everywhere is irrelevant to this case. Here, we have a former employer who attempted to prevent a California employee from pursuing lawful employment. This is exactly the type of situation the California legislature contemplated in enacting Cal. Bus. & Prof. Code § 16600.5. Whether this provision can also be read to apply "universally" to employment relationships that do not involve California residents is simply not a question at issue in this appeal.

As NRS points out, the Noncompete was not *rendered* void by California law; Georgia law did that. Even so, the Noncompete that NRS attempted to enforce against Ms. Carrandi was also void under Cal. Bus. & Prof. Code § 16600(a), and thus when NRS continued its litigation seeking enforcement of the Noncompete after Cal. Bus. & Prof. Code § 16600.5 went into effect, it committed a civil violation. Perhaps if the Noncompete had been enforceable under Georgia law, the Agreement's choice of law provision would have protected NRS's right to enforce

that provision, depriving Ms. Carrandi of a right to civil recovery. This is essentially NRS's argument, and it would be well-taken if the Noncompete had been enforceable under Georgia law. Alas, that is not this case.

### D. Constitutional Principles Do Not Prohibit the Application of California Law Against Employers of California Residents.

NRS's argument that "[t]he California legislature can no more control what happens outside of the state than California courts can exercise extraterritorial jurisdiction over a non-Californian with no connection to the state" is premised on the blatant falsehood that NRS had no connection with the state of California. (Appellee's Br., at 41.) By employing California residents, NRS created a connection with the state of California. By representing to the public that it has California offices, NRS created a connection with the state of California. By suing a California resident in attempt to enjoin her from pursuing lawful employment, NRS created a connection with the state of California. As such, it subjected itself to the application of California laws as they relate to those specific connections.

NRS's Brief suggests that it is confused by Ms. Carrandi's citation to its Employee Handbooks and its compliance with other California labor laws as they relate to its California employees. (Appellee's Br., at 23 n.15.) So for the sake of clarity: the purpose of introducing this evidence is to show that NRS's arguments regarding federalism, comity, due process, and "jurisdictional surprise" are disingenuous. Ms. Carrandi does not contend that NRS "subjected itself to

California law in all respects." But the Employee Handbooks show that NRS *knows* when it employs citizens of other states that it is obligated to comply with the law of its employees' home states as it relates to that particular employment relationship. All of the constitutional arguments NRS now makes against the application of California's restrictive covenant law could just as easily be made as to the applicability of, for example, California's Healthy Workplace Healthy Family Act of 2014. All state labor and employment laws can be said to "control what happens outside of the state" when they are applied to out-of-state employers, but those employers subject themselves to the laws of other states when they employ residents of those states.

NRS's contention that application of California law would offend principles of comity should likewise be rejected. At the outset, its claim that "Georgia has a strong public policy in favor of enforcing reasonable restrictive covenants" is incorrect. (Appellee Br., at 42.) The public policy relevant to the Noncompete at issue in this case is reflected in the law that was in effect when the parties signed the Agreement in 2005, since "[t]he enforceability of restrictive covenants entered into before May 11, 2011 (as is the case here) [is] based on the law as it stood at that time . . . . Before that date, Georgia law disfavored restrictive covenants, and the Georgia Constitution forbade the General Assembly from authorizing them."

Am. Anesthesiology of Georgia, LLC v. Northside Hosp., Inc., 362 Ga. App. 350, 354–55 (2021).

In fact, Georgia was "one of the very few states that [had] a public policy that [had] historically disfavored restrictive covenants." Gallagher Benefit Servs., Inc. v. Campbell, 528 F. Supp. 3d 1326, 1337 (N.D. Ga. 2021). See also Atlanta Ctr. Ltd. v. Hilton Hotels Corp., 848 F.2d 146, 148 (11th Cir. 1988) (acknowledging that Georgia had expressed "both in its constitution and in its statutory law, a strong public policy disfavoring contractual restraints on competition and trade"). It is *that* public policy that should be compared to California law, and that policy is completely consistent with California's "policy in favor of open competition and employee mobility." Edwards, 44 Cal. 4th at 946. Thus, principles of comity support the application of California law to Ms. Carrandi's counterclaim, since "[a]s a matter of comity, a Georgia court will defer to another state's statutes, as well as judicial decisions authoritatively interpreting those statutes, in determining the law of that state." Bowen v. Porsche Cars, N.A., Inc., 561 F. Supp. 3d 1362, 1372 (N.D. Ga. 2021).

Perhaps it is true that NRS believed it was acting according to Georgia law when it filed its lawsuit. But as an employer of California residents, NRS had notice of California's restrictive covenant laws, and should have known that it, in attempting to enforce a Georgia Noncompete against a California resident, it

assumed the risk that the Noncompete would be deemed unenforceable under Georgia law. It is not "preposterous," contrary to NRS's protestations, to hold that if an employer attempts enforcement of a restrictive covenant against a California employee based on a choice-of-law provision applying another state's law, it runs the risk of incurring civil liability under California law if that restrictive covenant is held unenforceable under the chosen state's law. To be sure, it is an expensive mistake to sue a California resident to enforce a restrictive covenant that turns out to be unenforceable. But someone has to bear that cost, and under California law, it must be the employer who chose to pursue the lawsuit.

## III.  <u>CONCLUSION</u>

NetRoadshow, Inc. chose to pursue a lawsuit against Lisa Carrandi seeking to enforce a facially overbroad restrictive covenant that she had signed nearly two decades earlier, with full knowledge that doing so was a civil violation under her own state's law. The district court fully adjudicated the parties' rights under the Employment Agreement when it held that the Noncompete provision at issue was "void on its face." Ms. Carrandi's counterclaim did not require the interpretation of either party's rights under the Agreement, and thus was not governed by Georgia law. Rather, under Georgia's choice of law principles, that claim should be governed by the law of the state where the injury was suffered: California.

Under California law, Ms. Carrandi is entitled to recover damages, including attorneys' fees and expenses, as a result of her former employer's wrongful attempt to enforce an unenforceable restrictive covenant. This Court should accordingly reverse the dismissal of Ms. Carrandi's Counterclaim and remand this case for a hearing on the damages.

Respectfully submitted this the 6th day of June, 2025.

*/s/ Mary Ellen Lighthiser*
Michael D. Flint
Georgia Bar No. 264725
Mary Ellen A. Lighthiser
Georgia Bar No. 105407
*Attorneys for Defendant/Appellant Lisa Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:  (678) 388-2680
E-mail:      mflint@mcclurelegal.com
             mel@mcclurelegal.com

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains a total of 3,235 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on June 6, 2025.

*/s/ Mary Ellen Lighthiser*
Mary Ellen A. Lighthiser
Georgia Bar No. 105407
*Attorneys for Defendant/Appellant Lisa Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone:   (678) 388-2680
E-mail:       mflint@mcclurelegal.com
             mel@mcclurelegal.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 6, 2025, I served a copy of this APPELLANT'S REPLY BRIEF by filing it with the Court's CM/ECF system, which will automatically serve a copy on all attorneys of record.

Respectfully submitted this the 6th day of June, 2025.

*/s/ Mary Ellen Lighthiser*
Mary Ellen A. Lighthiser
Georgia Bar No. 105407
*Attorneys for Defendant/Appellant Lisa
Carrandi*

MCCLURE & KORNHEISER, LLC
6400 Powers Ferry Road NW
Suite 150
Atlanta, GA 30339
Telephone: (678) 388-2680
E-mail:       mflint@mcclurelegal.com
               mel@mcclurelegal.com